**GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@go2.law
Michael R. Adele, State Bar No. 138339
madele@go2.law; techlitcenter@yahoo.com
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Counsel to Official Committee
Of Unsecured Creditors of Reliant Life Shares, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| RELIANT LIFE SHARES, LLC, | Case No. 1:24:bk:11695-MB |
| Debtor. | |
| | Adv. No. 1:25-ap-01033-MB |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RELIANT LIFE SHARES, LLC, | **AMENDED COMPLAINT FOR:** |
| Plaintiff, | 1. **BREACH OF FIDUCIARY DUTY;**<br>2. **BREACH OF CONTRACT;** |
| v. | 3. **UNFAIR COMPETITION;**<br>4. **FALSE ADVERTISING;** |
| SCOTT GRADY, an individual or the Estate of Scott Grady; RLS, Grantor, LLC, a purported to be a California limited liability company; LAFORCE HOLDINGS, LLC, a California limited liability company; TRISTAN CAPITAL, INC., aka TRISTAN CAPITAL GROUP, INC., a California corporation; SEAN MICHAELS, an individual; PB CONSULTING, LLC, a California limited liability company; PB Consulting 2, LLC, a California limited liability company, 2007 Irrevocable Octopus Trust, an entity of unknown organization; 2007 MMA Trust, an entity of unknown organization; RLM Trust, an entity of unknown organization; 18LS Holdings, LLC, a California limited liability company; | 5. **CONVERSION;**<br>6. **ELDER ABUSE;**<br>7. **UNJUST ENRICHMENT;**<br>8. **ACCOUNTING;**<br>9. **CONSTRUCTIVE FRAUDULENT TRANSFER;**<br>10. **INTENTIONAL FRAUDULENT TRANSFER; AND**<br>11. **NEGLIGENCE/BREACH OF DUTY TO AVOID HARM.** |

1                                                          COMPLAINT

SLG Trust, an entity of unknown organization and address; RELIANT LIFE SHARES SERIES TRUST, aka RLS Trust, a Trust; RMS TRUST, a Trust; RLS Grantor, LLC, a purported to be a California limited liability company; SLG TRUST, an entity of unknown organization and origin; ANDREW MURPHY, an individual; PAUL ROY, an individual; LARRY TUPLER, an individual; DAVID UNDERWOOD, an individual; GENERATIONAL WEALTH, INC., a California close corporation; GENERATIONAL WEALTH BUILDERS INSURANCE SOLUTIONS, INC., a California corporation; SHAWN DAVENPORT, an individual; CLINT LEWIS, an individual;; LARRY BAGBY, an individual; BRENT BORCHERT, an individual; RLS FINANCIAL SERVICES, INC., a California corporation; MARK SANSOUCY, an individual; STEVE SYMONS, an individual, VINCENT BOVINO, an individual; STEVE WILLIAMS, an individual; NINA MAHDAVI, an individual; BRIAN CLARK, an individual; SUSAN SPRIECK, an individual; RICH LUJAN, an individual; PROFECTUS FINANCIAL & INSURANCE SERVICES, INC., a California corporation; KELLY WOO, an individual; ALEKSANDER DYO, an individual; JOCHEN FAAS, an individual; DAVID BRAUN FINANCIAL & INSURANCE SERVICES, INC., a California corporation; DAVID BRAUN, an individual; LUKE WALKER, an individual; CONNOR GRADY, an individual; HEATHER GUNTER, an individual; NINA ESTRELLA, an individual; ALMA RAMIREZ, an individual;; ALEXANDRA GRADY, an individual; MACK BROWN, an individual; JOVAN MICHEL, an individual; BEN MOHR, an individual; WENDELL BRADBURY, an individual; JOANNA BOEY, an individual; THOMAS MEAGLIA, an individual; MOGENS PEDERSON, an individual; BARRY NEAL, an individual; FAE HAVENOR, an individual; MICHAEL FLOOD, JR., an individual; DALE

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

2                    AMENDED COMPLAINT

TENHULZEN, an individual; JAMES JOHNSON, an individual; ERIC WOLITZKY, an individual, CATHERINE (XIAOKUI) MA, an individual; WILLIAM RAMIREZ, an individual, DAVID DAY, an individual, JOHN MARQUES, an individual; KEITH SPRINGER, an individual; and HARSHAD SHAW, an individual; JOSEPH ASTALOS, an individual; ROBIN REEVES, an individual; ANDREW LEE, an individual; RON C. LESTER JR., an individual, GLENN NITTI, an individual; GARY OPP, an individual; RONALD LEDERKRAMER, an individual; JOHN FREIDRICKSON, an individual; DEBORAH MINEGAR, an individual; BRUCE WIEDE, an individual; NEIL BARBOUR, an individual; ROBERT ELDRIDG, an individual, CRAIG PONDER SR., an individual, and CHRISTOPHER M. STEVENS, an individual.

Defendants.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

3

AMENDED COMPLAINT

The Official Committee of Unsecured Creditors of Reliant Life Shares, LLC (the "Committee" or "Plaintiff"), derivatively in its own right acting on behalf of the general unsecured creditors of Reliant Life Shares, LLC (the "Debtor" or "Reliant") and/or as assignee assigned Reliant's right to prosecute the following claims on behalf of Reliant's estate, files this Complaint against afore-captioned Defendants (collectively, the "Defendants"), individually and/or in their capacities as an agent, broker, conspirator and/or aider and abettor of the insider Defendants in connection with wrongdoing alleged herein that has damaged Reliant.  In support of the Complaint, the Committee alleges upon information and belief that:

**PRELIMINARY STATEMENT**

1.      *In re Reliant Life Shares, LLC*, Central District of California Bankruptcy Case No. 1:24:bk:11695-MB, was commenced on October 7, 2024, by voluntary petition under Chapter 11 (the "Bankruptcy").

2.      The Debtor's business was to buy life insurance policies that insured the lives of insureds who could no longer afford to pay the premiums (or who otherwise did not want to continue to maintain the policy).  In 2015, the Debtor formed the Reliant Life Shares Series Statutory Trust (the **"Original Trust"**), a statutory trust under the laws of the State of Connecticut, to hold the policies and to facilitate sales of fractional interest positions (or "FIPs") related to such policies to third party customers.  Technically, Reliant did not sell interests in the policies themselves. Rather, Reliant sold fractional interest positions in Series Trusts (also called sub-trusts). Each Series Trust owned a single life insurance policy and the Trustee of each such sub-trust managed the Premium Reserve trust account in which funds were entrusted by Reliant's customers to pay the premium on the policy owned by that sub-trust. Each Premium Reserve Account was funded by the purchase price of the

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

FIP in the Series Trust purchased (and in some cases, subsequently, funded through premium calls made by Reliant on its customers).

3.      Reliant sold each FIP with the promise that a specified and purportedly reasonable estimated portion of the purchase money funds would be held in trust and used to pay the anticipated premiums to maintain the policy until the insured died[1] – at which point a specified portion of the proceeds of the insurance policy payout would be paid to the customer who purchased the fractional interest in the Series Trust or sub-trust that owned that policy.  If the insured outlived the (purportedly reasonable) life expectancy estimates, holders of the FIPs could either provide additional funds to continue maintaining the policy, or lose their FIPs (which would revert to Reliant).  As such, it was critical for Reliant in attracting future customers to assure that prospective customers that the portion of their purchase money that was to be held in trust would be safeguarded and used as promised to pay the premiums of the policy (or policies) owned by the Series Trust in which the customer purchased an FIP.

4.      A key element for the Reliant insiders' scheme to work was partnering with institutional trustees with experience acting as trustees of life settlement trusts. These institutional trustees included Wilmington Savings Fund Society, FSB dba Christiana Bank ("Christiana Bank"), Bank of Utah ("BOU"). First Western Trust Bank (aka First Western Bank & Trust) ("FWT") and UMB Bank, NA ("UMB") (collectively, the "Trustees").  Moreover, Reliant insiders structured the Original Trust and sub-trusts in a manner that obfuscated the true intent and ability of Reliant and its insiders to control and direct the flow of trust funds.

---

[1] More specifically, the Premium Reserve for each policy was supposed to cover policy premiums until either the insured died or until the insured had outlived his or her anticipated life expectancy plus one year.

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

5. Consequently, through website and marketing materials, Defendant insiders (with the knowledge, substantial assistance and/or agreement of each other Defendant) caused Reliant to tout how the so-called "independent trustee" and the trust structure itself would safeguard the customers' funds that were to be held in trust to pay the anticipated future premiums on the policies in which the customers purchased FIPs. However, rather than provide any meaningful assurance against misuse of the funds held in trust, the trust structure was intentionally designed to: (a) assure that the trustees were not "independent," but rather could (purportedly) insulate themselves from liability *inter alia* so long as they complied with Reliant's written directives; and (b) conceal the fact that Reliant's trustees were <u>not</u> independent and that the trust structure was <u>not</u> designed to safeguard Reliant's customers' funds placed in trust for the payment of premiums on the policy owned by the Series Trust in which Reliant's customer purchased an FIP. Reliant claimed publicly on its website and/or through marketing materials, from 2012 to 2023, that Reliant's trust funds were safeguarded through independent trustees and/or the trust structure itself – repeatedly (and deceptively) stating that "[i]n order to assure safekeeping of assets placed in Trust, the trustee has sole signatory authority" (when, in fact, the trust was set up so that the trustees would rubber stamp whatever written directives Reliant provided), and at one point even going so far as to represent at one point that "Reliant LIFE SHARES HAS NO ACCESS TO INVESTOR FUNDS WHATSOEVER" Emphasis in Original.

6. For instance, so long as the Trustee was instructed in writing by Reliant to disburse the funds, the "Trustee" was ostensibly contractually protected from liability under the trust agreement(s) for following the instructions, and was ostensibly not even required to investigate suspicious instructions to transfer funds for use unrelated to the payment of the specified insurance premiums for which the funds were supposed to be held in trust. In

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

other words, the so-called Trustee could ostensibly disburse funds for uses that were unrelated to the trust agreement if Reliant directed it in writing to do so, thereby creating a situation antithetical to the role of a trustee and effectively turning the so-called "trustee" into a *de facto* rubber stamp to disburse funds however Reliant directed it to disburse funds.

7.     Further preventing the true nature of the trust structure from being discovered, prospective customers were prevented from obtaining a copy of the trust agreement(s), and (if allowed at all) were only allowed to review them in person at the Trustees' home offices (which were often out of state) – thereby making it highly unlikely that prospective customers would ever travel (or have counsel travel) to the Trustee's (often out of state) home office to review the trust agreement. As a result, customers who purchased FIPs, generally did so based on the false and misleading marketing by Reliant, reinforced actively or tacitly by sales personnel touting marketing materials that the Controlling Defendants (defined *infra* below), who dominated and controlled Reliant, caused Reliant to issue.

8.     Moreover, one of the few actual explicit contractual obligations of these so-called "Trustees" included the obligation to notify series beneficiaries (*i.e.*, Reliant's FIP customers/creditors) when trust funds were disbursed. Abiding by this obligation was critical because it was one of the few obligations of the Trustees that could, conceivably at least, allow series beneficiaries (*i.e.*, Reliant's FIP customers/creditors) *some* possibility of discovering, attempting to end and/or mitigating future damage from Defendants' misuse of trust funds. However, it does not appear that the Trustees abided by this obligation, thereby providing a particularly ripe opportunity for the Controlling Defendants to misdirect and/or misuse trust funds, to conceal the evidence of such misdirection and misuse, and to perpetuate the scheme by continuing to sell the FIPs to unsuspecting new customers.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

9.      The Controlling Defendants, conspiring with and/or aided and abetted by the other defendants, not only sold FIPs based on false, deceptive and/or fraudulent representations claiming the funds were safeguarded against misuse, they did in fact begin looting funds that Reliant and/or the Trustees were obligated to hold (and were purportedly holding) in trust. Indeed, the two Defendant insiders (Grady and Michaels) were so avaricious in having the complicit Trustees wrongfully disburse trust funds for the Controlling Defendants' benefit, that they did not share these "disbursements" with the other 1/3 owner of Reliant (Daniel B. Cooper) and even tried to force Cooper out of Reliant before discovery of their wrongdoing.  Moreover, the looting of funds is believed to have left a shortfall in Reliant's ability to pay premiums as promised with the funds held in trust for that purpose, which Defendant insiders tried to conceal by paying those premiums using funds that were held in trust to pay premiums for *other* policies owned by *other* Series Trusts.  Thus, after selling FIPs on the bases that specified purchase money would be placed in trust and safeguarded to ensure payment of policy premiums for the policy owned by the Series Trust in which the FIP as purchased, the Controlling Defendants looted trust funds for their own personal gain (and that of their alter egos), the Defendants also began looting additional trust funds to meet obligations of other Series Trusts, thereby effectively concealing and delaying discovery of their prior looting and creating a *de facto* Ponzi scheme.

10.     Worse still, the insider Defendants then took further advantage of their wrongdoing by soliciting additional funds from customers on the false (implied and/or explicit) premise that these new funds would also be held in trust and safeguarded for use in paying the Series Trust premiums on the policy held by that Series trust by the purported independent trustee and/or trust structure – even though, as before, there was no such "independent trustee" and no trust structure designed to safeguard the use of trust funds to

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

pay the premiums for the Series Trust for which the additional funds were tendered. This wrongfully enabled Defendants to bring in additional funds from Reliant's customers under false pretenses to the benefit of the insider Defendants, allowing them *inter alia* to further hide and/or delay discovery of Defendants' prior looting as well as have additional funds they could loot as they saw fit. Alternatively, for those Reliant customers who did not pay the additional solicited funds, their FIPs reverted to Reliant (and, ultimately, the benefit of the Controlling Defendants). With regard to these forfeited fractional interests recovered by Reliant (also called "Tails" in Reliance's parlance), the Controlling Defendants (who dominated and controlled Reliant) then had Reliant either transfer or "sell" these tails to themselves and/or their alter egos for little or no money (*i.e.*, for amounts that could not conceivably be considered "reasonably equivalent value," thus siphoning off even more value for themselves), or kept the tails for the benefit of Reliant (and, ultimately, the benefit of the insider Defendants).

11.     These actions resulted in the Controlling Defendants, Reliant, and Cooper becoming involved in litigation over the millions of dollars disbursed to the insider Defendants without Cooper receiving his "share" of such disbursements, and thereafter resulted in a multi-million-dollar judgment (as amended) in favor of Cooper and against insider Defendants Sean Michaels, Scott Grady and their individual various alter-ego entities sued as Defendants here. This judgment awarded actual and punitive damages against the insider Defendants and/or their alter egos (as well as judgment against Reliant due to the insider defendants' domination and control over Reliant). That case was appealed and the judgment was affirmed in a published opinion, *Reliant Life Shares, LLC v. Cooper,* 90 Cal.App.5th 14 (2023) (the "Cooper Lawsuit"), which extensively discussed the wrongdoing of Michaels and Grady. For instance, as the appellate court noted:

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

a considerable amount of evidence was admitted about specific dollar amounts—in the many millions of dollars—that Michaels and Grady looted from Reliant and took as their own personal assets. That evidence, together with the evidence (not challenged on appeal) of their malice, oppression and fraud, was sufficient to support the punitive damages award [¶] [and that] Michaels and Grady and their respective entities received at least $1.7 million in payments and distributions based on their positions as owners of Reliant as of December 31, 2018.

*Reliant Life Shares, LLC,* 90 Cal.App.5th at 40. So too, the appellate court also noted and agreed with the trial court's denial of JNOV based on the trial court finding that:

> "[t]here was also substantial evidence, indeed admissions, that Michaels and Grady created shell companies such as PB Consulting LLC (for Michaels) and LaForce Holdings LLC (for Grady) as conduits through which they could funnel money from Reliant to other entities, such as the Friwat policy, for their own benefit. These shell companies were part of the fraud determined by the jury that prevented Cooper from discovering all sums paid to Michaels and Grady." The trial court also stated in its JNOV ruling, that "there was ample evidence that an injustice would result, given that Cooper demonstrated that Michaels and Grady had used the corporate coffers of Reliant as their own personal piggy banks."

*Reliant Life Shares, LLC,* 90 Cal.App.5th at 36. Additionally, as the appellate court further found:

> "Tails" are policies[2] that investors have forfeited to Reliant by failing to pay the premiums after purchasing the policies from Reliant. "18LS [Holdings], LLC, an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant. Grady did not pay anything for the tails he received and 18LS [Holdings], LLC paid $1,000 for the entirety of Tails it received." (The tails were later valued at $880,225.98.)

*Reliant Life Shares, LLC,* 90 Cal.App.5th at 25 (parenthetical in original and <u>not</u> added) (footnote added). Additionally, Michaels' and Grady's use of alter egos to loot funds was

---

[2] The appellate court statement is somewhat inaccurate and potentially misleading, in that "Tails" are not the policies themselves. Rather, in Reliant's parlance, "Tails" are the forfeited or unsold *positions* in the policies owned by Reliant's various series trusts (*e.g.,* unsold or reverted fractional interest *positions* in the Reliant Series Trust that owned the policies).

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

further established with the following evidence that the appellate court quoted favorably from the trial court:

> "Michaels exerted such a unity of ownership over Reliant by dictating when payments would be made and how they would be classified without any methodology for doing so, such that there was essentially no separation between Michaels and Reliant. Michaels also made decisions regarding Reliant without input from Cooper, despite the fact that Cooper was and is a one-third member of Reliant. Payments to Michaels were casually made without the use of a payroll company. Further, Michaels artificially manipulated Reliant's books and records by (among other things) reclassifying historical data to negatively impact the perceived profitability of Reliant, to the detriment of Cooper. Additionally, Michaels authorized transfers from Reliant to himself and to some of the Michaels Entities without regard for whether Reliant was properly capitalized to conduct business on an ongoing basis." The court reached similar conclusions as to Grady. "Likewise Grady utilized Reliant and his entities LaForce Holdings, LLC, Tristan Capital, Inc., the RLS Trust, and the SLG Trust (the 'Grady Entities') as an extension of himself, by disregarding corporate formalities, comingling money, and transferring assets without consideration; so much so that Reliant and the Grady Entities are alter egos of Grady." The court recited the same facts supporting this conclusion that we have just recited with respect to Michaels and his entities.

*Reliant Life Shares, LLC,* 90 Cal.App.5th at 36-37.

12.    In short, the Defendants' actions alleged herein not only looted money directly from Reliant, but also from Reliant's customers who became customers based on the false promise that purchase money (and/or additionally solicited) funds set aside to pay anticipated premiums, for the policy owned by the Series Trust in which Reliant's customer purchased an FIP, would be used for that purpose. As a result, Reliant has been damaged directly through the looting of its own funds, and consequentially by damages to its reputation and ability to conduct business, as well as the liability resulting from their misconduct in selling FIPs (and/or soliciting additional funds relating thereto) under false, deceptive and/or fraudulent pretenses, as well as the liability for misusing trust funds that they promised to hold in trust for a specific purpose, as well as the cost of litigating numerous

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

lawsuits due to their misconduct (including the Cooper Lawsuit and other individual and/or class action creditor lawsuits).

13.    The Committee brings the present adversary proceeding to recover assets wrongfully acquired by Defendants from Reliant, to recoup damages to Reliant's estate that have been and/or will be caused by the Defendants' wrongdoing alleged herein and to obtain whatever equitable relief is available and appropriate to rectify and/or prevent future damage by Defendants' wrongful conduct.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over this adversary proceeding, which arises under, arises in, and relates to cases under title 11 of the United States Code, in the United States Bankruptcy Court the Central District of California, San Fernando Valley Division (the "Court"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

15.    The statutory and legal predicates for the relief sought herein are sections 510, 544, 547, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

16.    This adversary is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

17.    Venue is proper in the Central District of California, San Fernando Valley Division pursuant to 28 U.S.C. § 1409.

18.    Regardless of whether this proceeding is core, non-core, or otherwise, the Committee consents to the entry of a final order and judgment by the Court, Defendants are hereby notified that Bankruptcy Rule 7008 requires it to plead whether consent is given to the entry of a final order and judgment by the Court.

12                                                        AMENDED COMPLAINT

## PARTIES

### Plaintiff

19.     Reliant is a limited liability company organized under the laws of the State of California.

20.     The Plaintiff/Committee was appointed by the United States Trustee on November 6, 2024 pursuant to the authority granted to him under section 1102 of the Bankruptcy Code.

21.     On November 25, 2024, the Debtor and the Committee filed a consensual Stipulation for Order Granting Committee Standing to Pursue Avoidance Actions and Other Causes of Action Belonging to the Debtor [Dkt No. 75] (the "Stipulation"). The Bankruptcy Court thereafter entered an order approving the Stipulation [Dkt No. 156]. The Stipulation vested the Committee with standing to pursue:

> claims for relief and/or causes of action, including those under Sections 510, 547, 548, 549, 550 and 551 of the Bankruptcy Code, may exist against former principals and insiders of the Debtor, including without limitation Sean Michaels, Joel Kleinfeld, Scott Grady, SLG Trust, Daniel Cooper, and Richard Cooper as trustee of the 2010 Irrevocable Trust of BBC ("Insiders") (together, the "Committee Claims")

Docket No. 75, 2:5-9 (emphasis added).

### Defendants

### Insider and/or Senior Reliant Employee Defendants

22.     Plaintiff is informed is informed and believes that, at all times relevant to the facts and circumstances alleged herein, Defendant Scott Grady ("Grady") was a resident of the State of California, who was a founding member and one third owner of Reliant, who also served as Reliant's President from approximately 2018-2023, who owed fiduciary duties to Reliant during the misconduct alleged herein, and who was (at one time) an

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

attorney licensed to practice law in California.  According to the State Bar of California website, Grady had several complaints filed against him in 2002, 2005 and 2008, resulting in numerous disciplinary actions making him ineligible to practice law in California in 2002, 2004, 2006 and 2008, and ultimately resulting in his permanent disbarment in July 2009. Plaintiff is also informed and believes that, in addition to benefitting from looting trust funds, in approximately 2015, Grady sold and received commissions on at least $370,000 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts GJ9510 and MW8350 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite false and fraudulent representations by Reliant on its website (and/or through other documents provided or available) to prospective purchasers that such funds would be safeguarded by an "independent trustee" and by the trust structure itself to pay the policy premiums owned by the Series Trust (despite the fact that the trustee was *not* independent and that the trust was *not* structured to safeguard Premium Reserve trust funds for use to pay premiums on the policy for which they were designated) ("False and Fraudulent Safeguard Representations").  The Committee is informed and believes that Grady passed away on June 2, 2025 in Los Angeles, California.  He is being sued here as an individual and, to the extent he has in fact passed away, his estate is being sued herein as well and/or in lieu of direct action against him.

23.    Defendant La Force Holdings, LLC, is a California limited liability company, which filed its Articles of Organization with the California Secretary of State ("SOS") on January 7, 2015, listing its address as 149 South Barrington Ave., Suite #461, Los Angeles, California 90049 (SOS Doc. No. 201501310006).  It was required to file a Statement of Information due as of January 31, 2017, which it failed to do and which failure it never

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

remedied and so never disclosed its manager. Accordingly, Defendant La Force was suspended February 8, 2018, and its status with the SOS is listed as "suspended." Its members are currently unknown to Plaintiff. This is one of the entities found to have been one of Grady's alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

24. Defendant Tristan Capital, Inc. is a California corporation, also known (legally) as Tristan Capital Group, Inc. ("Tristan Capital"), which filed its Articles of Organization with the California SOS on September 25, 2008 (SOS Doc. No. 3162953) and lists its organizer as Joel Kleinfeld (who is referenced in the *Cooper v. Reliant* case as having held Grady's interest in Reliant for some period of time was not found liable in the Cooper case). Its Statement of Information filed with the California SOS lists Joel Kleinfeld as its CEO, Secretary and CFO, listing its address as 2029 Century Park East, 14th Floor, Los Angeles, California 90067. The SOS lists this the standing of this entity as "Good" (notwithstanding being delinquent in providing an SOI from and after September 30, 2009), and lists its standing with the California Franchise Tax Board as "suspended." This is one of the entities found to have been one of Grady's alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant. Plaintiff is informed and believes that Tristan Capital sold Reliant FIPs under false, deceptive and/or fraudulent pretenses, and was listed as the sales agent in 2014 for $20,771,264.00 in sales – generating commissions of $573,555.00. The total amount of such false, deceptive and/or fraudulent sales is unknown, as are the Trust Series sold by Tristan Capital, which may have extended into approximately 2018. These appear to be the same sales also credited to Sean Michaels, for reasons as yet unknown.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

25.    Defendant Reliant Life Shares Series Trust, also known as the RLS Trust ("RLS Trust"), is an entity of unknown organization whose trustee and business address is unknown.  This is one of the entities found to have been one of Grady's alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant. Additionally, Plaintiff is also informed and believes that between approximately April 2013 and August 2016, RLS Trust, in addition to benefitting from looting trust funds, sold and received commissions on at least $363,067.96 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts GJ9510, MW8350 and DC0249 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

26.    SLG Trust is an entity of unknown organization, whose trustee and business address is unknown.  This is one of the entities found to have been one of Grady's alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

27.    Defendants LaForce Holdings, LLC, Tristan Capital, Inc., RLS Trust and SLG Trust were held, in *Cooper v. Reliant*, to be Grady's alter-egos relative to Reliant related claims made by Daniel B. Cooper against Grady, Michaels and others (the "Michaels Entities").  This is one of the entities found to have been one of Grady's alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

28.    Defendant Sean Michaels ("Michaels"), an individual whose address unknown, was also a founding member and one third owner of Reliant who owed fiduciary duties to Reliant.  Michaels was an owner of Reliant who subsequently sold his interest in

AMENDED COMPLAINT

Reliant to Grady in February of 2018 for $1.5 Million.**3**  Plaintiff is informed and believes that Michaels sold Reliant FIPs under false, deceptive and/or fraudulent pretenses, and was listed as the sales agent in 2014 for $20,771,264.00 in sales – generating commissions of $573,555.00.  The total amount of such false, deceptive and/or fraudulent sales is unknown, as are the Trust Series sold by Michaels, which may have extended into approximately 2018.

29.     Defendant PB Consulting, LLC (also known as PB Consulting #1), a California limited liability company, filed its Articles of Organization with the California SOS on January 29, 2015, listing its address as 4910 Topeka Drive, Tarzana, California 91356 (SOD Doc. No. 201503010172).  Its Statement of Information lists it as "consulting," and lists Michaels as its manager and CEO (SOS Doc. No. 17-70335).  It is listed with the SOS as suspended as of May 3, 2021. This is one of the entities found to have been one of Michaels' alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.  Sean Michaels is also listed as its manager or member in its 2017 Statement of Information (SOS Doc. No. 17-720335).

30.     Defendant PB Consulting 2, LLC, a California limited liability company, filed its Articles of Organization with the California SOS on May 31, 2016, listing its address as 4910 Topeka Drive, Tarzana, California 91356 (SOD Doc. No. 201615810379).    Its Statement of Information lists it as a "holding company," and lists Michaels as its manager (SOS Doc. No. 16-747407).  It is listed with the SOS as dissolved as of March 18, 2020. This is one of the entities found to have been one of Michaels' alter egos in the looting

---

**3** Daniel B. Cooper, the other founding member and one-third owner of Reliant is not named as a Defendant here because, among other things, Cooper has already settled estate claims against him in connection with a separate adversary proceeding (*i.e., Official Committee of Unsecured Creditors of Reliant Life Shares, LLC v. Cooper*, Central District Bankruptcy case no. 1:25:ap-01004-MB).

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

described in the Reliant opinion, and so is included here as an insider defendant. Sean Michaels is also listed as its manager or member in its 2016 Statement of Information (SOS Doc. No. 16-747407).

31.    Defendant 18LS Holdings, LLC ("18LS"), a California limited liability company, filed its Articles of Organization with the California SOS on May 8, 2017, listing its address as 15260 Ventura Boulevard, Suite 1420, Sherman Oaks, California 91403 (SOD Doc. No. 201713510365). Its Statement of Information lists it as a "holding company" (SOS Doc. No. 16-747407). It is listed with the SOS as dissolved as of November 20, 2019. This is one of the entities found to have been one of Michaels' alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant. Luke Walker is listed as a manager or member of 18LS.

32.    Defendant 2007 Irrevocable Octopus Trust is an entity of unknown organization, whose trustee and business address is unknown. This is one of the entities found to have been one of Michaels' alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

33.    Defendant 2007 MMA Trust is an entity of unknown organization, whose trustee and business address is unknown. This is one of the entities found to have been one of Michaels' alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

34.    The RLM Trust is an entity of unknown organization, whose trustee and business address is unknown. This is one of the entities found to have been one of Michaels' alter egos in the looting described in the Reliant opinion, and so is included here as an insider defendant.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

18                                    AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

35.    Defendant PB Consulting, LLC, PB Consulting 2, LLC, 2007 Irrevocable Octopus Trust, 2007 MMA Trust, RLM Trust, and 18LS Holdings, LLC were held, in Cooper v. Reliant, to be Michael's alter-egos relative to Reliant related claims made by Daniel B. Cooper against Grady, Michaels and others (the "Michaels Entities").

36.    Defendant RLS Grantor, LLC is purported to be a California limited liability company as reflected in the Reliant trust agreement entitled Second Amended and Restated Agreement and Declaration of Trust dated effective as of March 16, 2023, whose address is unknown. There is no record with the California Secretary of State of RLS Grantor, LLC as being registered as a limited liability company in the State of California. Plaintiff is informed and believes and based thereon alleges that RLS Grantor, LLC is a sham entity that may or may not exist as anything other than a disguised dba of an individual or entity, and that to the extent it exists, it was formed by one or more Defendants to act as their alter ego, to substantially aid and abet Defendants' wrongdoing alleged herein, and/or to conspire with or among Defendants to facilitate the wrongdoing alleged herein.

37.    Plaintiff is informed and believes that Defendant SLG Trust is a trust of unknown organization and origin, which at all times material hereto was the manager/member of Reliant, and whose principal address is believed to be the same Ventura Adress and suite number as Reliant, and is responsible for the sale of Reliant's FIPs under false, deceitful and/or fraudulent pretenses and/or concealment of the wrongdoing alleged herein, directly, indirectly and/or as a co-conspirator and/or aider and abettor.

38.    Plaintiff is informed and believes that Defendant Andrew Murphy ("Murphy"), a Florida resident, Reliant's employee, salesperson and Chief Executive Officer of Reliant who directly (and by directing others) sold Reliant's FIPs under false, deceptive and/or

AMENDED COMPLAINT

fraudulent pretenses to inter alia, Raymond E. Douglass, who was well over 65 at the time Murphy sold him numerous separate FIPs from approximately 2015 through 2018, and who is believed to have been experiencing serious health difficulties, suffering from dementia and not sound of mind when he purchased the Reliant FIPs from Murphy, totaling over $753,000. This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team." Murphy is believed to have signed an Agent of Record Certification in connection with the foregoing purchase(s), falsely claiming to have explained all the risks to Douglass, falsely claiming that Douglas was a suitable candidate for purchase, and falsely claiming to explain the potential impact of premium calls. Murphy is also believed to have met with Gwen Douglas in approximately November 2018, and falsely claimed that Mr. Douglass' FIP investment was liquid. After Mr. Douglas died in 2020, when one of Mr. Douglass' FIP insureds died, the FIP proceeds were not paid to Mr. Douglas or his heirs, but was instead improperly applied to pay premiums on other policies. Additionally, Plaintiff is also informed and believes that, between approximately September 2014 and March 2017, Murphy sold and received commissions on at least $250,000 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GN4954, DC0249, MR8412, WP7826, MS0229 and HA7233 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations. Murphy's current address is currently believed to be 412 SW 6th Avenue, Boca Raton, Florida 33486.

39.     Plaintiff is informed and believes that Defendant Brent Borchert ("Borchert"), a California resident, was held out to potential customers (and customers) as Reliant's "Compliance Attorney," directly (and by directing others) sold FIPs under false, deceptive

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

and/or fraudulent pretenses (and/or concealed other wrongdoing alleged herein), and conspired with (and/or aided and abetted) those so acting, from at least approximately 2015 through 2017. This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team," who was purportedly as a practicing attorney "well suited to tackle the arduous task of ensuring that not only the mechanisms of Reliant Life Shares are in compliance with the law, but all investors as well." Defendant Borchert functioned and/or was held out to potential and/or actual customers as a senior Reliant officer and/or employee responsible for assuring that Reliant's FIPs were marketed and/or sold legally, which tacitly included *inter alia* the obligation to assure that Reliant's marketing and/or sales were not effectuated through false, deceptive and/or fraudulent pretenses, that Reliant's Trustees were "independent" as Reliant publicly represented, and that the "trust structure" was reasonably designed to actually safeguard trust funds. As alleged and shown below, however, Reliant's marketing and/or sales were effectuated through false, deceptive and/or fraudulent pretenses, Reliant's Trustees were not "independent" as Reliant publicly represented, and the "trust structure" was not reasonably designed to safeguard trust funds (but rather to insulate the trustees from liability, to facilitate Reliant's improper sales and marketing of FIPs under false pretenses, to facilitate looting by insiders and to conceal Defendants' wrongful misconduct alleged herein). Additionally, Plaintiff is also informed and believes that between approximately October 2013 and July 2015, Borchert sold and received commissions on at least $136,442.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts GN4954, 2013-1, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

40.    Plaintiff is informed and believes that Defendant Christopher M. Stevens ("Stevens") is a California resident, who was held out to customers and potential customers as Reliant's "General Counsel," directly (and by directing others) sold FIPs under false, deceptive and/or fraudulent pretenses (and/or concealed other wrongdoing alleged herein), and/or conspired with (and/or aided and abetted) those so acting, from at least approximately 2022 through 2023 . This individual was held out to customers and potential customers on Reliant's website during the afore-mentioned time frame as part of "Our Team."

41.    Plaintiff is informed and believes that Defendant Nina Estrella, a California resident, was held out to customers and potential customers as Reliant's "Controller," directly (and by directing others) sold FIPs under false, deceptive and/or fraudulent pretenses (and/or concealed other wrongdoing alleged herein), and/or conspired with (and/or aided and abetted) those so acting, from at least approximately 2015 through 2019. Estrella was held out to customers and potential customers as, among other things, being "responsible for all aspects of Reliant's accounting, ranging from reconciling bank accounts holding premium reserves to preparing financial statements and assisting with tax returns." This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team."

42.    Plaintiff is informed and believes that Defendant Connor Grady ("C. Grady") is Scott Grady's son, was employed by Reliant, and was responsible for Reliant's in-house sales and marketing, including without limitation from approximately 2022 through 2023, and is responsible for the wrongdoing herein, including without limitation the sale of Reliant's FIPs under false, deceitful and/or fraudulent pretenses.  This Defendant was held out on Reliant's website as a "Sales Associate" that was part of "Our Team" in the foregoing period.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Additionally, Plaintiff is also informed and believes that, between approximately December 2015 and March 2022, C. Grady sold and received commissions on at least $382,000 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MR8412, DC0249, MS0229, HA7233, WV4951, JY3252, LS4268, FR1977, SJ2361, MH8921 and 2012-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

43.    Plaintiff is informed and believes that Defendant Alexandra Grady  is Scott Grady's daughter, was employed by Reliant, served as a liaison between Reliant and its customers/creditors, provided Reliant customers/creditors with false, deceptive and/or fraudulent information to perpetrate and/or conceal the wrongdoing alleged herein, and/or unjustly obtained (and retained) benefit from the wrongdoing alleged herein and, as such, is responsible for said wrongdoing.

### Agent, Broker and/or Reliant Sales/Marketing Defendants

44.    Plaintiff is informed and believes that Defendant Larry Tupler ("Tupler") is and at all times material hereto was a resident of Los Angeles County who, from in or about 2012, acted as a sales agent for Reliant Life Shares, LLC, selling Reliant's FIPs under false, deceptive and/or fraudulent pretenses at the direction of RLC LLC and SLG Trust.  Plaintiff is informed and believes and based thereon alleges that Tupler tortiously sold Reliant's FIPs under false, deceptive and/or fraudulent pretenses to numerous Reliant customers, including without limitation:  (a) to John Annis, a California resident, who was over the age of 65 when Tupler sold him Reliant's FIPs, and who paid $300,000 for them in or about April 2022; (b) to Susan Bacon, a California resident, who purchased Reliant FIPs from Tupler in

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

2012 totaling $200,000, in 2015 totaling $25,000, and in 2017, totaling $65,000 in 2017, and who was over 65 when the Tupler sold here Reiant FIPs in 2017; (c) to Ed Baeza, a California resident, who purchased (on his own behalf)  Reliant's FIPs from Tupler in May and October 2020 totaling approximately ($150,368.91), additionally purchased from Tupler for Mr. Baeza's Gaman LLC (a Wyoming LLC Mr. Baeza controlled) paying $350,000 in or about October 2020, and further purchased from Tupler Reliant FIPs for Yeyo, LLC (a California LLC Mr. Baeza controlled) paying $450,000, and who was over 65 when he purchased such FIPs on behalf of himself and his Gaman and Yeyo LLCs; (d) to Concepcion Baeza, a California resident, who purchased Reliant's FIPs in approximately May and October 2020 totaling approximately $150,368.91; (e) to John Corper, a California resident, who purchased a total of approximately $435,700 in Reliant FIPs from Tupler in approximately July and December 2019, when Corper was over 65; (f) to Melissa Foland, who purchased from Tupler a total of approximately $1,252,000 in Reliant FIPs from Tupler in May and June 2022; (f) to Abraham Galvan, a California resident, who purchased from Tupler a total of approximately $1,176,500 in Reliant FIPs from approximately November 2021 through June 2022; (g) to Severina Galvan, a California resident, who purchased from Tupler a total of approximately $552,000 in Reliant FIPs in approximately January 2022, when she was over 65; (h) to Gene Golden, a California resident, who purchased from Tupler a total of approximately $99,998 in Reliant FIPs from approximately July 2018 through October 2018, when he was over 65; and (i) to Jorge Tovar, a California resident, who purchased from Tupler a total of approximately $300,000 in Reliant FIPs in approximately January 2019; and (j) Joseph Vanderhoff, who was over 65 when in purchased Reliant FIPs, was solicited for such sale(s) by Tupler and purchased them in or about 2022 and 2023.  Additionally, Plaintiff is also informed and believes that, between

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

approximately December 2012 and June 2020, Tupler sold and received commissions on at least $13,442,306.24 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-4, 2013-5, GJ9510, 2013-3, 2013-1, GN5954, MV4552, PS0272, MW8350, DC0249, MR8412, WP7826, MS0229, HA7233, VV4951, AH8411, JY3252, LS4268, SA6304, FR1977, DB6208, PC4205, VR7091, MH8921, BL5053, MH8921 and SJ2361 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

45.    Plaintiff is informed and believes that Defendant Paul Roy ("Roy") was a salesperson of Reliant FIPs, acted as a high-level employee, agent, manager, broker and/or associate of Reliant (and/or another entity selling Reliant FIPs).  Plaintiff is further informed and believes that, although Roy was a seller of Reliant's FIPs, he is not licensed to sell Life Settlement, and he sold said FIPs under false, deceitful and/or fraudulent pretenses, including without limitation to:   (a) Fancine Behar, who Roy met in 2016 to sign the paperwork regarding purchase of Reliant FIPs; (b) Paul Bugler, who Roy met in 2016 to sign the paperwork regarding purchase of Reliant FIPs; (c) Walter Bugler, who Roy met in 2016 to effectuate the sale of Reliant's FIPs; (d) Gwendolyn Douglas (as trustee of Raymond E. Douglass revocable Trust, who Roy met with Ms. Douglas' father Raymond Douglass to effectute the sale of Reliant FIPs, to pick up checks and to sell Mr. Douglass additional policies despite Mr. Douglass suffering from dementia (or perhaps because Mr. Douglass was suffering from Dementia; (e) Richard Estrada, who Roy met in December 2015 to effectuate the sale of Reliant FIPs; (f) Emory W. Long, who was over 65 at the time Roy met him in or about 2022 to effectuate multiple sales of Reliant FIPs; (g) Steven C. Romer, whom Roy met in approximately October 2015 to sign the paperwork for the sale of

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Reliant FIPs; (h) John Stocksdale, who was over 65 when he met with Roy in approximately May 2016, and who sold him Reliant FIPs in or around that time frame; and (i) Jennifer Vance, who met with Roy on or about August 2016, and who was sold Reliant FIPs by Roy. Plaintiff is informed and believes that all of said meetings by Roy and various persons above who invested in Reliant's FIPs was to effectuate the sale of Reliant FIPs under false, deceptive and/or fraudulent pretenses. Additionally, Plaintiff is also informed and believes that, between approximately October 2015 and 2022, Roy sold and received commissions on an unknown amount of fraudulent sales of Reliant FIPs, at least some of whose Premium Reserve trust accounts were likely looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

46.   Plaintiff is informed and believes that Defendant David Underwood ("Underwood") was a salesperson who acted as a high-level employee, agent, manager and/or associate of Reliant (and/or another entity selling Reliant FIPs), who sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses, including without limitation:  (a) Walter Bugler, who met with Underwood in or about 2016; (b) Felicia Clark, who met with Underwood in her resident state of Colorado, and whom Underwood convinced to provide a fraudulent California address for registration of the FIPs sold to her in or about 2014; (c) Steven Romer, who met with Underwood in or about October 2015 to sign documentation purchasing Reliant FIPs; (d) Greg Schmitt, who met with Underwood in approximately August 2016, in connection the sale of Reliant's FIPs; and (e) Jennifer Vance, who met with Underwood in selling her Reliant FIPs in or about August 2016.  Additionally, Plaintiff is also informed and believes that, between approximately June 2012 and March 2020, Underwood sold and received commissions on at least $12,118,743.66 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts DC0249,

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

26                                                              AMENDED COMPLAINT

MR8412, MS0229, HA7233, 2013-1, 2012-5, MR8412, AH8411, 2013-5, WP7826, WV4951, 2013-3, 2013-4, MV4552, PS0272, GN4954, MW8350, MV4552, LS4268, GJ9510, JY3252, SA6304, FR1977, AH8411, LH6768, SA630 and SC7176 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

47.     Plaintiff is informed and believes that Defendant Generational Wealth, Inc., is a California close corporation whose principal business address was 3711 Long Beach Blvd., Suite 810, Long Beach, California 90807, that Shawn Davenport was (and is) its agent for service of process at 3711 Long Beach Blvd., Suite 201, Long Beach, California 90807, and that Generational Wealth, Inc. sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from approximately 2015, including without limitation through sales made by Defendant Shawn Davenport.  Defendant Generational Wealth, Inc. was found delinquent, penalized and eventually suspended by California's Franchise Tax Board (all in 2018).  Plaintiff is informed and believes that Defendant Generational Wealth, Inc. is the *alter ego* of Defendant Davenport and/or Defendant Generational Wealth Builders Insurance Solutions, Inc.

48.     Plaintiff is informed and believes that Defendant Generational Wealth Builders Insurance Solutions, Inc., a California corporation who (as of at least May 5, 2015) had as its principal business address 3711 Long Beach Blvd., Suite 810, Long Beach, California 90807, that Shawn Davenport was (and is) its agent for service of process at the afore-mentioned address, and that Generational Wealth, Inc. sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from approximately 2015, including without limitation through sales made by Defendant Shawn Davenport (its CEO, CFO and Secretary and Director).  Defendant Generational Wealth, Inc. was found delinquent for failure to file a

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Statement of Information (which it remedied) and was suspended by California's Franchise Tax Board (all in 2017). Plaintiff is informed and believes that Defendant Generational Wealth Builders Insurance Solutions, Inc. is the *alter ego* of Defendant Shawn Davenport and/or Defendant Generational Wealth, Inc.

49. Plaintiff is informed and believes that Defendant Shawn Davenport ("Davenport") was an owner, operator, agent, high level officer and/or salesperson of Generational Wealth, Inc. (serving as its CEO, CFO, Secretary, Director and registered agent for service of process), who sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from at least approximately 2015-2016, including without limitation to Trudy Belinda Johnson. His last known work address is 3711 Long Beach Blvd, Suite 810, Long Beach, California 90807, and last known (believed to be personal, but may have been an alternate work) address is 1830 East Ocean Blvd., Suite 203, Long Beach, California 90802. Additionally, Plaintiff is also informed and believes that, between approximately November 2014 and July 2017, Davenport sold and received commissions on at least $150,500 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GJ9501, MW8350, DC0249, MR8412, WP7826, MS0229 and HA7233 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

50. Plaintiff is informed and believes that Defendant Clint Lewis ("Lewis") was an owner, operator, agent, high level officer, director and/or salesperson of Generational Wealth, Inc., who was responsible for the sale of Reliant's FIPs under false, deceitful and/or fraudulent pretenses by Generational Wealth, Inc. from at least approximately 2015-2016. Additionally, Plaintiff is also informed and believes that, between approximately 2015-2016,

AMENDED COMPLAINT

Lewis sold and received commissions on an unknown amount of fraudulent sales of Reliant FIPs, at least some of whose Premium Reserve trust accounts were likely looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

51.     Plaintiff is informed and believes that Defendant Larry Bagby ("Bagby") was a salesperson who acted as a high-level employee, agent, manager and/or associate of Reliant (and/or another entity selling Reliant FIPs), who sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses, including without limitation to Cliford Ritz, who purchased Reliant FIPs in 2017 through the Cliff Ritz Family Trust Dated March 3, 2017. Additionally, Plaintiff is also informed and believes that, between approximately June 2015 and August 2018, Bagby sold and received commissions on at least $1,226,780.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GN4954, MW8350, DC0249, MR8412, WP7826, MS0229, HA7233, GJ9510, GJ9510, JY3252, LS4268, SA6304, WV4951, LH6768 and AH8411 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

52.     Plaintiff is informed and believes that Defendant RLS Financial Services Inc. ("RLS Financial") is a California corporation who, through high level employees and/or sales people including without limitation Mark Sansoucy, Steve Symons and/or others sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses. Additionally, Plaintiff is also informed and believes that, between approximately December 2012 and June 2022, RLS Financial (through Sansoucy and possibly others) sold millions of dollars in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

including (in whole or in part) Series Trusts 2012-5, 2013-1, 2013-3, 2013-4, 2013-5, MR8412, HA7233, DC0249, GN4954, MW8350, MV4552, MS0229, AH8411, PC4205, PS0272, FR1977, VR7091, SJ2361, MH8921, GJ9510, FR1977, WP7826, DB6208, WV4951, LS4268, LH6768, SA6304, JY3252, SC7176, PC4205, DB6208, BL5053 and SJ2361 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

53.     Plaintiff is informed and believes that Defendant Mark Sansoucy ("Sansoucy") was a salesperson who acted as a high-level employee, agent, manager and/or associate of RLS Financial (and/or another entity selling Reliant FIPs), as well as the Chief Executive Officer, Secretary and Chief Financial Officer of RLS Financial, who sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses. Additionally, Plaintiff is also informed and believes that, between approximately December 2012 and June 2022, Sansoucy sold and received commissions on at least $41,830,595.16 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, 2013-1, 2013-3, 2013-4, 2013-5, MR8412, HA7233, DC0249, GN4954, MW8350, MV4552, MS0229, AH8411, PC4205, PS0272, FR1977, VR7091, SJ2361, MH8921, GJ9510, FR1977, WP7826, DB6208, WV4951, LS4268, LH6768, SA6304, JY3252, SC7176, PC4205, DB6208, BL5053 and SJ2361 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

54.     Plaintiff is informed and believes that Defendant Steve Symons was a salesperson who acted as a high-level employee, agent, manager and/or associate of RLS Financial (and/or another entity selling Reliant FIPs), including without limitation Head of

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Sales for RLS Financial, who sold and/or substantially aided and abetted others selling, FIPs under false, deceitful and/or fraudulent pretenses. Plaintiff is also informed and believes that, between approximately December 2012 and June 2022, Symons made and/or substantially aided and abetted the sale of and received commissions on an unknown amount of deceptive and/or fraudulent sales of Reliant FIPs in as yet unknown number of Series Trusts.

55.     Plaintiff is informed and believes that Defendant Vincent Bovino ("Bovino") was a salesperson who acted as a high-level employee, agent, manager and/or associate of Reliant (and/or another entity selling Reliant FIPs), who sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses. Additionally, Plaintiff is also informed and believes that, between approximately December 2019 and March 2021, Bovino sold and received commissions on at least $4,282,194.34 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts SA6304, FR1977, SC7176, SC7176, PC4205, VR7091, DB6208, PC4205, BL5053 and SJ2361 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

56.     Plaintiff is informed and believes that Defendant Steve Williams served as the Chief Business Development Officer of Reliant, responsible for working with the agent sales force to develop commission and fee-based sales. Plaintiff is informed and believes that Williams worked for an unknown period of time with Reliant from or about 2014-2016, and is believed to have coordinated with Reliant's then-Sherman Oaks, California office, while residing in Florida. This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team," whose function was focused on building sales across the US and other countries.

AMENDED COMPLAINT

57. Plaintiff is informed and believes that Defendant Nina Mahdavi served as the Head of Sales Operations of Reliant, responsible for working with Reliant's agent network to develop commission and fee-based sales. Plaintiff is informed and believes that Mahdavi worked for an unknown period of time with Reliant in or about 2015.

58. Plaintiff is informed and believes that Defendant Brian Clark ("Clark") served as the Director of Business Development of Reliant, responsible for working with Reliant's agent network to develop commission and fee-based sales. Plaintiff is informed and believes that Clark worked for an unknown period of time with Reliant in or about 2015-2019, is believed to have been based in Southern California, and was held out as a member of "Our Team" on Reliant's website. Additionally, Plaintiff is also informed and believes that, between approximately October 2015 and March 2020, Clark sold and received commissions on at least $1,374,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts PS2072, GN4954, MW8350, MV4552, GJ9510, DC0249, MV4552, MR8412, WP8726, HA7233, FR1977, WV4941, AH8411, JY3252, LS4268, WV4951, SA6304 and PS0272 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

59. Plaintiff is informed and believes that Defendant Susan Sprieck ("Sprieck") served as the Director of Business Development of Reliant, responsible for working with Reliant's agent network to develop commission and fee-based sales. Plaintiff is informed and believes that Sprieck worked for an unknown period of time with Reliant in at least 2014-2016.

60. Plaintiff is informed and believes that Defendant Rich Lujan ("Lujan") served as Business Development Specialist of Reliant, responsible for working with Reliant's agent

32                                                                          AMENDED COMPLAINT

and potential agents.  Plaintiff is informed and believes that Lujan worked for an unknown period of time with Reliant in at least 2018-2020.  Additionally, Plaintiff is also informed and believes that, between approximately February 2014 and January 2019, Clark sold and received commissions on at least $44,800.93 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts JY3252, LS4268, SA6304 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

61.    Plaintiff is informed and believes that Defendant Profectus Financial & Insurance Services, Inc. ("Profectus"), a California corporation whose principal business address was 750 W. 7th Street, Suite 201, Los Angeles, California 90017, which listed Kelly Woo as Chief Executive Officer, Secretary and Director, and listed Aleksander Dyo as Chief Financial Officer and  Director, and listed Kingdom Impact Capital, 750 W. 7th Street, Suite 201, Los Angeles, California 90017 as its registered agent for service of process, sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from at least approximately 2017, including without limitation to Gregori Basilyan in 2017.

62.    Plaintiff is informed and believes that Defendant Kelly Woo ("Woo"), a California resident, whose principal business address was 750 W. 7th Street, Suite 201, Los Angeles, California 90017, who served as Profectus' Chief Executive Officer, Secretary and Director, and who served as an employee, agent, and/or associate of Reliant (and/or another entity selling Reliant FIPs such as Profectus), while Reliant (and its affiliates) sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses, from at least approximately 2017, including without limitation to Gregori Basilyan in 2017 and whom Reliant listed as an agent in subsequent communications (and whom Woo is believed to

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

have sold Reliant FIPs through Prospectus). Additionally, Plaintiff is also informed and believes that, between approximately December 2017 and May 2018, Woo sold and received commissions on at least $3,240,559.64 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MR8412, HA7233, WV4951, DC0249, AH8411, MS0229, JY3252 and LS4268 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

63.    Plaintiff is informed and believes that Defendant Aleksander Dyo, a California resident, whose principal business address was 750 W. 7th Street, Suite 201, Los Angeles, California 90017, and who served as Profectus' Chief Financial Officer and Director, sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from at least approximately 2017 through Profectus, including without limitation to Gregori Basilyan in 2017, with whom Dyo met at Basilyn's house in Glendale in 2017 to sign the paperwork to transfer IRA funds to Reliant for the purchase of Reliant FIPs.

64.    Plaintiff is informed and believes that Defendant Jochen Faas ("Faas") served as an employee, agent, and/or associate of Reliant (and/or another entity selling Reliant FIPs), while Reliant (and its affiliates) sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses, and that Faas met with (among others) Wei Jia (aka Diana Jia), sold her Reliant FIPs under false, deceptive and/or fraudulent pretenses (such as by mentioning Warran Buffet as an investor in substantial amounts of life settlements, which was deceptive because Buffet is not known to be an investor of FIPs like the ones sold by Reliant, and by claiming and/or implying that Reliants' FIPs are very profitable investments that would be safer than investing in the stock market). Additionally, Plaintiff is also informed and believes that, between approximately July 2017 and November 2018, Fass sold and received

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

commissions on at least $509,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MR8412, HA7233, SR5034, MR8412, DC0249, MS0229, JY3252, LSV268, SA6304, FR1977 and WP7826 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

65. Plaintiff is informed and believes that Defendant David Braun Financial & Insurance Services, Inc. ("DB Financial"), a California corporation who had as its principal business address 400 N. Mountain Avenue, Suite 202, Upland, California 91786, that David Braun was (and is) its CEO, Secretary, CFO and director, as well as its agent for service of process at 1332 Ruth Way, Upland, California 91784, and that DB Financial sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from approximately 2015, including without limitation through sales made to Roberto Yomul.

66. Plaintiff is informed and believes that David Braun, directly or through his company DB Financial, sold Reliant's FIPs under false, deceitful and/or fraudulent pretenses from approximately 2015, including without limitation through sales made to Roberto Yomul. Additionally, Plaintiff is also informed and believes that, between approximately April 2013 and June 2014, Braun sold and received commissions on at least $2,640,933.75 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, 2013-1 and 2012-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

67. Plaintiff is informed and believes that Defendant Luke Walker was employed by Reliant, heavily involved in Reliant's operations and sales, and is responsible for the sale of Reliant's FIPs under false, deceitful and/or fraudulent pretenses. Additionally, Plaintiff is

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

35 AMENDED COMPLAINT

also informed and believes that, between approximately September 2013 and April 2018, Walker sold and received commissions on at least $186,829.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1, HA7233, MV4552, PS0292, GN4954, MS0229, WP7826, VV4951, AH8411, JY3252, LH6768, LS4268, MRH412 and HA7233 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

68.    Plaintiff is informed and believes that, between approximately March 2017 and November 2020, Defendant Mack Brown sold and received commissions on at least $8,380,092.34 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, 2013-1, 2013-3, 2013-4, 2013-5, MV4552, GN4954, MS0229, HA7233, AH8411, MR8412, MS0229, GJ9510, MW8350, DC0249, JY3252, PS0272, WP7826, VV4951, LS4268, LH6768, SA6304, FR1977, SC176, PC4205 and VR7091 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

69.    Plaintiff is informed and believes that, between approximately May 2018 and May 2022, Defendant Jovan Michel sold and received commissions on at least $4,325,906.28 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts HA7233, VV4951, AH8411, JY3252, LS4268, HA7233, SA6304, FR1977, MR8412, SC7176, WP7826, 2012-5, MS0229, BL5053, SJ2361, PC4205, VR7091, DB6208, PC4205, MV4552 and MH8921 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

36    AMENDED COMPLAINT

70.    Plaintiff is informed and believes that, between approximately May 2016 and June 2018, Defendant Benjamin Mohr sold and received commissions on at least $2,577,563.98 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts JG9510, MR8412, SR5034, DC0249, MW8350, HA7233, MS0229, WV4951 and JY3242 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

71.    Plaintiff is informed and believes that, between approximately September 2017 and November 2019, Defendant Wendell Bradbury sold and received commissions on at least $2,492,750.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts HA7233, WV4951, MS0229, AH8411, DC0249, LS4268, LH6768, JY3252, LH6768, FR1977, 2013-5, MV4552, MR8412, SA6304 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

72.    Plaintiff is informed and believes that, between approximately November 2016 and July 2018, Defendant Joanna Boey sold and received commissions on at least $2,142,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts DC0249, MR8412, WP7826, MS0229, HA7233, WV4951, JY3252, LS4268, LH6768 and LS4268 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

73.    Plaintiff is informed and believes that, between approximately December 2012 and April 2020, Defendant Thomas Meaglia sold and received commissions on at least $2,066,900.24 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts,

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

including sales of FIPs in Series Trusts 2012-5, 2013-1, 2013-3, 2013-4, 2013-5, MV4552, PS0272, GJ9510, MW8350, DC0249, MR8412, HA7233, FR1977, PC4205 and VR7091 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

74. Plaintiff is informed and believes that, between approximately October 2012 and October 2017, Defendant Mogens Pederson sold and received commissions on at least $1,745,685.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts GN4954, GJ9510, MW8350, 2013-1, DC0249, MR8412 and HA7233 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

75. Plaintiff is informed and believes that, between approximately February 2014 and August 2018, Defendant Barry Neal sold and received commissions on at least $1,000,044.81 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-3, 2013-5, DC0249, MR8412, WP7826, MS0229, MV4552, PS0272, HA7233, JY3252, MR8412, WV9451 and LS4268 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

76. Plaintiff is informed and believes that, between approximately July 2012 and January 2014, Defendant Fae Havenor sold and received commissions on at least $997,578.96 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1, 2013-3, 2013-4, 2013-5, PS0272 and GJ5910 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

AMENDED COMPLAINT

77.     Plaintiff is informed and believes that, between approximately October 2013 and April 2017, Defendant Michael Flood, Jr. sold and received commissions on at least $850,334.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GN4954, GJ9510, MW8350, DC0249, 2013-5, MR8412 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

78.     Plaintiff is informed and believes that, between approximately March 2014 and January 2017, Defendant Dale Tenhulzen sold and received commissions on at least $790,875.06 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts PS2072, GN4954, MV4552, DC0249, MR8412, WP7826, MS0229 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

79.     Plaintiff is informed and believes that, between approximately February 2014 and January 2018, Defendant James Johnson sold and received commissions on at least $781,215.37 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-3, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

80.     Plaintiff is informed and believes that, between approximately May and November 2018, Defendant Eric Wolitzky sold and received commissions on at least $746,500.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MR8412, HA7233, WV4951, AH8411, JY3252, LS4268,

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

SA6304 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

81.    Plaintiff is informed and believes that, between approximately February 2018 and February 2019, Defendant Catherine (Xiaokui) Ma sold and received commissions on at least $645,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts DC0249, MR8412, HA7233, JY3252, LS4268, WV4951, AH8411 and SA6304 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

82.    Plaintiff is informed and believes that, between approximately May 2013 and November 2017, Defendant William Ramirez sold and received commissions on at least $631,233.01 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-4, 2013-5, MV4552, GJ9510, MW8350, PS0272, DC0249, MR8412, WP7826 and JY3252 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

83.    Plaintiff is informed and believes that, between approximately November 2013 and April 2014, Defendant David Day sold and received commissions on at least $591,178.27 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1, 2013-3, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

84.    Plaintiff is informed and believes that, between approximately March 2016 and August 2016, Defendant John Marques sold and received commissions on at least $563,900.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts PS0272, MW8350, MR8412, WP7826, DC0249 and MS0229 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

85.    Plaintiff is informed and believes that, between approximately April to October 2016, Defendant Keith Springer sold and received commissions on at least $554,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, JG9510, MW8350, DC0249, FJ9510, MR8412 and WP7826 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

86.    Plaintiff is informed and believes that, between approximately July 2013 and May 2014, Defendant Harshad Shaw sold and received commissions on at least $545,680.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1, 2013-3, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

87.    Plaintiff is informed and believes that, between approximately February 2014 and February 2016, Defendant Joseph Astalos sold and received commissions on at least $479,194.08 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1, 2013-4, 2013-5, GN4954, PS0272, MW8350, DC0249, MR8412, HA7233, JY3252 and LS4268 each of whose Premium Reserve trust

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

88. Plaintiff is informed and believes that, between approximately September 2015 and December 2018, Defendant Robin Reeves sold and received commissions on at least $465,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GN4954 and JY3252 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

89. Plaintiff is informed and believes that, between approximately May 2014 and March 2016, Defendant Jeff Guiltinan sold and received commissions on at least $452,000 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-3, GJ9510, MW8350, PS0272 and DC0249 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

90. Plaintiff is informed and believes that, between approximately June 2015 and April 2016, Defendant Andrew Lee sold and received commissions on at least $425,210.08.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, GN4954, GJ9510, MW8350, DC0249; GJ9510, MW8350 and DC0249 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

91. Plaintiff is informed and believes that, between approximately October 2012 and June 2017, Defendant Ron C. Lester Jr. sold and received commissions on at least $405,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

sales of FIPs in Series Trusts 2012-5 and MS0229 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

92. Plaintiff is informed and believes that, between approximately December 2018, Defendant Frank Peck sold and received commissions on at least $400,459.75 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, PS0272, MR8412, WP7826, MS0229, HA7233, WV4951, AH8411, JY3252 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

93. Plaintiff is informed and believes that, between approximately December 2012 and October 2015, Defendant Glen Nitti sold and received commissions on at least $390,943.39 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, 2013-1, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

94. Plaintiff is informed and believes that, between approximately October 2012 to October 2017, Defendant Marvin Tarnol sold and received commissions on at least $390,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, PS0272, DC0249 and MR8412 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

95. Plaintiff is informed and believes that, between approximately June 2013 and January 2014, Defendant Gary Opp sold and received commissions on at least $380,279.89

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2013-1 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

96. Plaintiff is informed and believes that, between approximately September 2014 and July 2018, Defendant Ronald Lederkramer sold and received commissions on at least $372,500.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, MW8350, JY3252, 2013-5, PS0272, GJ9510, M8350, GN4954, HA7233 and LS4268 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

97. Plaintiff is informed and believes that, between approximately March 2018 and August 2019, Defendant Deborah Minegar sold and received commissions on at least $350,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MR8412, MS0229, WB4951, JY3252, LS4268, HA7233, SA6304 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

98. Plaintiff is informed and believes that, between approximately May 2014 and July 2014, Defendant Bruce Weide sold and received commissions on at least $330,000.00 in deceptive and/or fraudulent sales of Reliant FIPs, including sales in Series Trust 2013-3 whose Premium Reserve trust account was looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

99.    Plaintiff is informed and believes that, between approximately April 2013 and January 2014, Defendant Neil Barbour sold and received commissions on at least $250,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5, 2013-4 and 2013-5 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

100.    Plaintiff is informed and believes that, between approximately March 2013 and September 2013, Defendant Robert Eldridge sold and received commissions on at least $250,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts 2012-5 and 2013-3 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

101.    Plaintiff is informed and believes that, between approximately August 2019 and February 2020, Defendant Craig Ponder Sr. sold and received commissions on at least $175,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts AH8411, JY3252, SA6304 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

102.    Plaintiff is informed and believes that, in approximately August 2019, Defendant Michael Bell sold and received commissions on at least $45,000.00 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts SA6304 and FR1977 each of whose Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

45                                                          AMENDED COMPLAINT

103.    Simply stated, Defendants sold FIPs in Reliant's Series Trusts under the false, deceptive and/or fraudulent pretenses – claiming on Reliant's website, in marketing documents and/or other communications with potential investors from approximately 2012 through 2023 that purchase money from their purchase of Reliant FIPs would be placed in a Premium Reserve Account and safeguarded for use by an "independent trustee" and by Reliant's "trust structure" to assure that those funds would be used only for payment of the policy premium owned by the Series Trust in which Reliant's customer was purchasing an FIP.

104.    However, Reliant's trustees were not "independent" and the trust agreement was structured to create a *lack* of independence by the Trustee, as it purported to insulate the trustee from liability so long as the Trustee followed whatever written direction Reliant provided the Trustee. For instance, the Trusts' terms purport to shield the Trustors from any meaningful liability for undermining this purpose ("Unconscionable Trust Provisions"), including without limitation:

- Paragraph 4.2 -- "The Trustee undertakes to perform and shall perform . . . as the Trustee may be directed from time to time in writing . . . " and

- Paragraph 4.3(a) -- Upon written instructions by the Grantor/Debtor, the Trustee "shall be entitled to rely upon such instrument, and shall not be required to examine such instrument to determine whether it conforms to the requirements of this Agreement." See also, ¶¶ 4.5, 4.6 and 4.7. (Trustee may rely on written document "believed to be genuine," *i.e.*, presumably, believed not to be a forgery), is not required to investigate the facts or matters stated in the document and is not liable for "the

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

46    AMENDED COMPLAINT

validity of the assignment of any Trust Asset from the Trust, and is further shielded from liability by any opinion from counsel").

*See e.g.*, Reliant Life Shares Series Statutory Trust Agreement and Declaration of Trust, Dated as of June 15, 2015 and amendments thereto.[4]

105.   Provisions such as these in a so-called "Trust" agreements are highly one-sided, overly harsh and defeat the very purpose of the Trust Agreement – *i.e.,* safeguarding trust funds for their intended purpose for the benefit of the beneficiaries (*i.e.*, Reliant's customers).   Plaintiff is informed and believes that, had customers ever learned of such provisions, they would have been surprised to learn that the Trustees were not "independent" and that the trust structure, through these provisions, actually *encouraged* Trustees to rubber stamp and effectuate Reliant's written directives without regard to the purpose of the trust or protection of the beneficiaries' interests.   No one in his or her right senses, and/or not under delusion, would have purchased Reliant FIPs and become beneficiaries under Reliant's (purported) "safeguarding" trust agreements that included such provisions, which are so one-sided as to oppress and unfairly surprise innocent parties such as Reliant's FIP customers (*i.e.*, the trust beneficiaries) who were told by Defendants there would be an "independent trustee" and trust structure to assure the entrusted funds would be used for their promised purpose.   Simply stated, such provisions are substantively unconscionable.

106.   Indeed, Defendants never corrected their material misrepresentations about there being an "independent trustee" and trust structure purportedly designed to safeguard

---

[4] *See also*, Reliant Life Share Series Statutory Trust 2, dated June 16, 2015, ¶¶ 4.2 – 4.6 (same); 4.3 (same) 4.5 (same) and ¶ 4.6 (same); *see e.g.*, Louisiana Life Equity, LLC Trust Agreement and Declaration of Trust, Dated as of July 30, 2013 ¶¶ 4.2 – 4.6 (collectively, these three basic trust agreements shall be referenced as the "Trust Agreements").

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

the trust funds.  Moreover, the Trust Agreements were structured to prevent prospective and actual customers from learning the truth.  For instance, the Trust Agreements themselves only authorized the Trustees to make the Trust Agreements available for review by *actual* customers (*i.e.*, beneficiaries who had already purchased Reliant's FIPs), and then only if the customer provided written notice of its desire to review the trust agreement(s) during business hours at the non-California business address specified in the Trust Agreements (and was willing to travel out of state to review the agreements).  *See e.g.*, Trust Agreements, ¶¶ 4.6(g) and 7.3(iii).  Even worse, there is no provision in the trust agreements that would authorize the Trustee to allow review of the trust agreement by any *prospective* customers.  See Trust Agreements.

107.    Plaintiff is informed and believes that provisions in the Trust Agreements themselves, including without limitation the provisions cited above, effectively concealed from prospective (and actual customers), and created an unreasonable impediment to discovering, that Defendants' representations about the "safeguarding" nature of the trust structure and "independent" trustees were false, fraudulent, deceptive and/or misleading. So too, potential customers were unable to negotiate the terms of the Trust Agreements, which were *de facto* adhesion contracts that potential customers effectively were required to accept (or reject), sight unseen, based on Defendants' misrepresentations.  This was not only highly deceptive, it effectively provided Reliant's customers with an absence of meaningful choice, was unreasonably favorable to Reliant and the Trustees, was unreasonably *un*favorable to the trusts' express third-party intended beneficiaries (Reliant's customers), and thereby created an unreasonable overall imbalance in the obligations and rights imposed by the Trust Agreement.  This too constituted procedural unconscionability.

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

108. Given the procedural and substantive unconscionability of the Unconscionable Trust Provisions, the standard for unconscionability is met under the laws of California, Utah and Connecticut. Moreover, Plaintiff is informed and believes that Utah and/or Connecticut choice of law provisions in the Trust Agreements, to the extent such laws are less protective than California law, were also substantively and procedurally unconscionable because, *inter alia*: (1) Reliant's FIP Purchase Agreements expressly stated that California law applied, and made no mention of the Trust Agreements being governed by any other state's laws; (2) the pertinent Trust Agreements were not provided to potential customers for review before making investment decisions; (3) California's unconscionability laws are more protective than Utah or Connecticut in voiding unconscionable contract terms, such that California law should apply to assure proper protection of California residents and California elderly, which California has a strong interest in protecting; and/or (4) Connecticut unconscionability law was chosen in most of the Trust Agreement *because* it is less protective in voiding unconscionable contract provisions, as evidenced by the fact that Grantor Reliant, the Trustees and the customers/trust-beneficiaries had *no* significant connection to Connecticut. As such, the choice of law provisions in the Trust Agreements specifying Utah and/or Connecticut law as the governing law, appears designed to minimize Trustee liability and shield unconscionable provisions from being stricken, voided or otherwise found unenforceable. Accordingly, the choice of law specified in the Trust Agreements is also unconscionable and unenforceable.

109. Regardless of whether the choice of law provisions in the Trust Agreements govern, or whether California law applies, the Unconscionable Trust Provisions are unconscionable under applicable law such that they can and should be stricken and/or otherwise held unenforceable. After Defendants misled potential customers (and having

AMENDED COMPLAINT

misled actual customers) into purchasing Reliant FIPs based on purported trust structure safeguards, then failed to correct their materially false, fraudulent and/or deceitful statements about Reliant's trust funds being "safeguarded" – even while using a "trust structure" itself to undermine reasonable safeguards, concealing the Unconscionable Provisions by preventing reasonable access to the trust agreements, and choosing applicable law in order to maximize the ability to enforce the Unconscionable Provisions – all of the unconscionable provisions in the trust agreements should be stricken, considered void and/or otherwise held to be unenforceable for unconscionability (whichever law applies).

110.   Indeed, as a result of these Unconscionable Provisions, when Reliant issued numerous instructions to its trustees to (mis)use Premium Reserve trust funds to pay premiums for *other* Series Trusts, which it did, such instructions were generally followed by Reliant's Trustees – effectively resulting in the looting of purportedly "safeguarded" funds. This looting occurred under the watch of a purportedly "independent trustee" (which there was not) and within the apparent safety of the "trust structure" (which there was not).

111.   In addition to joint and several liability for conspiring and/or aiding and abetting the false, deceptive and/or fraudulent sale of FIPs for which Plaintiff seeks recovery herein, Reliant also seeks recovery for, restitution for and/or disgorgement of commissions paid on all sales of FIPs under false, fraudulent and/or deceptive sales practices (including without limitation any sales Defendants made between approximately 2012 through 2023), as in this time frame, *inter alia,* Defendants were selling FIPs based on the materially false claim to be using an "independent trustee" and/or "trust structure" that (purportedly) held in trust and safeguarded Premium Reserve funds of each subtrust for use in paying the policy premium owned by that sub trust -- regardless of whether the specific Trust Series

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

referenced herein were ultimately looted and/or whether the commissions were purportedly "earned" in the specific time frame referenced above with regard to each Defendant. Given the poor record keeping of Reliant by the Controlling Defendants, Plaintiff currently lacks sufficient information and belief to establish all of the sales made and commissions earned, and some or all Defendants are likely to have additional information not currently in Plaintiff's possession to help establish the full amount of improper FIP sales and commissions earned. Plaintiff reserves the right to amend the time period or sales made as may be necessary or appropriate.

## Miscellaneous Reliant "Team" Defendants

112. Plaintiff is informed and believes that Defendant Heather Gunter ("Gunter"), a California resident, was held out to customers and potential customers as Reliant's "Operations Manager," directly (and by directing others) sold FIPs under false, deceptive and/or fraudulent pretenses (and/or concealed other wrongdoing alleged herein), and/or conspired with (and/or aided and abetted) those so acting, from at least approximately 2015 through 2021. Gunter was held out to potential customers (and customers) as "providing exceptional case management to our agent and investor base, working closely with escrow agents [and others] to ensure a smooth and timely investment process." This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team." Additionally, Plaintiff is also informed and believes that, between approximately March 2015 and September 2020, Gunter sold and received commissions on at least $507,359.66 in deceptive and/or fraudulent sales of Reliant FIPs in Series Trusts, including sales of FIPs in Series Trusts MV4552, GJ9510, MW8350, PS0272, HA7233, WV4951, AH8411, JY3252 and FR1977 each of whose

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

51                                    AMENDED COMPLAINT

Premium Reserve trust accounts were looted to pay premiums of other series-trust-owned policies – despite the False and Fraudulent Safeguard Representations.

113.    Plaintiff is informed and believes that Defendant Alma Ramirez, a California resident, was held out to customers and potential customers as Reliant's "Office Manager," directly (and by directing others) sold FIPs under false, deceptive and/or fraudulent pretenses (and/or concealed other wrongdoing alleged herein), and/or conspired with (and/or aided and abetted) those so acting, from at least approximately 2015 through 2023. Ramirez was held out to customers and potential customers as a helping "ensure the office functions efficiently." This Defendant was held out to potential customers and customers on Reliant's website during the afore-mentioned time frame as part of "Our Team."

### Overview of Defendants' Liability

### Liability for Own Actions, as an Alter Ego, a Conspirator, Aider and Abettor, Agent and/or Principal

114.    Each Defendant named herein is legally responsible for the wrongdoing alleged herein, either as a result of his, her or its own direct actions or inactions, as an *alter ego* of another Defendant with regard to the wrongdoing alleged herein, indirectly due to the actions of a co-conspirator in connection with a conspiracy to commit the wrongdoing herein, as an aider and abettor of another Defendant whose wrongful actions are alleged herein, as an agent who committed the wrongdoing alleged herein at the direction of a principal, and/or a principal whose agent committed wrongdoing in connection with misconduct alleged herein within the course and scope of such agency.

115.    Defendants herein are responsible for the damages to Reliant (and Reliant's estate) resulting from their sale of Reliant's FIPs under false, deceitful and/or fraudulent premises, and induced such sales through negligently, recklessly and/or consciously disregarding Reliant's (and Reliant's customers') rights in connection with such sales,

AMENDED COMPLAINT

and/or intentionally selling Reliant's FIPs under such circumstances, *inter alia*, either by affirmatively misrepresenting (or failing to correct material misrepresentations they knew or should have known were made) regarding the likely return on investment for those purchasing FIPs from Reliant, that an independent trustee would safeguard funds held in trust for premium payments, that the "trust structure" would safeguard such funds held in trust, and/or that Premium Reserve Calls were unlikely to be made by Reliant, and/or by concealing and/or attempting to delay discovery of the wrongdoing alleged in this Complaint.

116.   Defendants are further responsible *inter alia* for the misuse, diversion, misappropriation and/or looting of sale proceeds, the wrongful acquisition by Reliant (while dominated and controlled by the Controlling Defendants) of additional funds through the improper solicitation of funds through false, deceptive and/or fraudulent Premium Reserve calls that failed to disclose the looting of Premium Reserve accounts and their failure to safeguard Premium Reserve trust funds for their stated purpose, the wrongful and/or fraudulent transfer of FIPs whose ownership reverted to Reliant, and/or concealment of the above (and, indeed, the concealment of all wrongdoing alleged in this Complaint against Defendants).

117.   Reliant was damaged by Defendants' conduct by creating massive legal liability for Reliant, whose sale of FIPs were subject to recission and who faced liability to Reliant's customers under a myriad of legal theories and a bevy of lawsuits, especially when customers did not obtain the return on investment they were promised and/or led to believe they would experience, when the (purported) independent trustees and trust structure did not in fact safeguard funds placed in trust (but instead facilitated the looting of trust funds that did in fact occur), and when Reliant made Premium Reserve Calls (tacitly under false,

deceptive and/or fraudulent premises, including without limitation the false impression created, continuing and never contradicted by Defendants that Premium Reserve funds would be held in trust and safeguarded for exclusive use to pay policy premiums of the Series Trust to which the funds were entrusted).

118.   Agents are responsible to third parties (*inter alia* pursuant to Civil Code Section 2343) where, as here, when: (1) the agent, with his, her or its consent, is given credit personally in a transaction; and/or (2) the agents' acts are wrongful in nature.  "Acts are wrongful in their nature" for purposes of Civ. Code, § 2343, when they constitute an independent tort.  As such, agents are liable for their own torts, whether the principal is liable or not, and in spite of the fact that the agent acted in accordance with the principal's directions. The fact that the principal becomes liable under the rules of vicarious liability or otherwise does not exonerate an agent from liability for a tortious act committed by the agent while acting under the authority of the principal.  *See e.g., Peredia v. HR Mobile Services, Inc.*, 25 Cal. App. 5th 680, 682 (2018); Civ. Code § 2343; *see also Weinberg v. Dayton Storage Co.*, 50 Cal. App. 2d 750 (1942) (agent is liable for conversion, though he acts in good faith and in exact accord with instructions of his principal, if latter is guilty of conversion).

119.   Plaintiff is informed and believes that Defendants herein, by virtue of their roles in selling and/or marketing Reliant's FIPs, knew, should have known and/or recklessly/consciously disregarded that Reliant's marketing materials (many of which were publicly available online through its website) falsely portrayed the likely return on investment, the safeguards regarding customer funds placed "in trust" for the payment of premiums to preserve their investment, and the unlikelihood of facing Premium Reserve Calls.  Defendants herein either reinforced such false portrayal through affirmatively re-

AMENDED COMPLAINT

iterating or reinforcing such falsehoods, evading questions regarding such falsehoods and/or remaining silent about such falsehoods.

120.    Plaintiff is further informed and believes that Defendants knew, should have known and/or recklessly/consciously disregarded Reliant's customers were relying upon such false information when deciding to purchase Reliant's FIPs, and therefore Defendants had a duty to correct the false impression that Defendants had created and inform those seeking to purchase Reliant's FIPs of either:  (1) the correct information regarding return of investment, the safeguarding or customer funds, and the likelihood of Premium Reserve Calls; and/or (2) that the information they received regarding return of investment, the safeguarding or customer funds, and/or the likelihood of Premium Reserve Calls issuing was not reliable and should not be relied upon when investing in Reliant's FIPs.  So too, before accepting funds for Premium Reserve Calls, Defendants had a duty to disclose to customers receiving such calls that: (a) the funds were needed and being sought because Reliant's trust funds had been looted by Reliant insiders, many of whom remained actively involved in Reliant's business; (b) any additional funds provided through the Premium Reserve Calls would not be safeguarded by any "independent" trustee or "trust structure"; (c) the funds were not, as it would have appeared absent further disclosure in connection with the Premium Reserve Call, being sought because the insured outlived the life expectancy for which the Premium Reserve was established; and/or (d) refusal to tender funds for a Premium Reserve Call issued as a result of Defendants' looting of premium reserve funds would not result in the reversion to Reliant of ownership of their FIP's.  However, Defendants breached the afore-mentioned duties, thereby proximately causing further damage to Reliant (as well as Reliant's customers/creditors).

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

121.    Additionally, a seller's agent or broker is liable for his affirmative and intentional misrepresentation to the buyer and is also liable for mere nondisclosure to buyer of defects known to agent and unknown and unobservable by buyer, since agent's conduct amounts to representation of existence of facts that he has failed to disclose. *Lingsch v. Savage*, 213 Cal. App. 2d 729 (1963).

122.    So too, a person is liable for his participation in conspiracy having for its object commission of wrongful act, even though he acts only as agent for another and is unacquainted with details of scheme, and though he expected no benefit from wrongful act and in fact received none. *State v. Day*, 76 Cal. App. 2d 536 (1946).

123.    Moreover, where an agent knowingly participates with his principal in a transaction which is fraudulent, he is equally responsible with principal for return of money. *Wells Fargo Bank & Union Trust Co. v. Dowd*, 139 Cal. App. 2d 561 (1956).

124.    All Defendants who committed the wrongdoing alleged in this Complaint in the course of their employment with Reliant did not do so for the benefit of Reliant, but instead did so for their own benefit, whether that benefit be their own continued employment, continued payment of salary, benefits and/or commissions, receipt of looted funds, benefit to an *alter ego*, or otherwise. As such, these Defendants acted in their own interests, which were adverse to Reliant, and which Reliant could not effectively stop or remedy (due to Controlling Defendants' adverse domination and control over Reliant).    Moreover, Defendants were not the sole agents of Reliant in relation to the misconduct alleged here. Indeed, at a minimum, if the misconduct alleged herein had been disclosed to Reliant's minority owner Daniel Cooper, Reliant's Trustees and/or others, said persons could have and should have acted to stop Reliant from continuing to engage in such conduct (either through derivative action and/or informing Reliant customers subject to such misconduct).

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

As such, to the extent that Defendants committed the wrongdoing alleged herein in the course of their employment with Reliant, Defendants had someone to whom they could impart their knowledge (and from whom they could conceal it) who could have ended the misconduct, thereby protecting Reliant and its customers (who are now creditors with claims against Reliant).

125.    Additionally, knowledge of the Defendants (especially but not exclusively knowledge of the Controlling Defendants) cannot be imputed to Reliant, because bad acts of corporate insiders are not imputed on a corporation and any *in pari delicto* defense does not apply (especially, where, as here, the non-Controlling Defendants conspired and/or aided and abetted the Controlling Defendants' wrongdoing).  Here, in connection with the misconduct herein alleged, the Controlling Defendants forced Reliant to act for the benefit of the Controlling Defendants (and for the benefit of the Controlling Defendants' *alter egos*), to the overwhelming detriment of Reliant (and its estate and its customers/creditors), through the Controlling Defendants' domination and control over Reliant.

## FACTS COMMON TO ALL COUNTS

### A.  Reliant's Formation and Business

126.    Reliant was formed in 2011 by Cooper, Michaels, and Kleinfeld.

127.    Reliant formed Reliant Life Shares Series Statutory Trust (the "Trust").  The Trust held life insurance policies that had been purchased from insureds who no longer wanted to pay or could no longer afford to pay the premiums for their policies.  Reliant then sold to its customers fractional interest positions in the series that owned those policies. In exchange for their purchase of a fractional interest position, the customers were supposedly guaranteed a prescribed portion of the future death benefit of the policy proceeds when the insured died.

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

128.   Reliant did not and does not directly own the life insurance policies that it purchased and thereafter sold to investors (except when FIP customers refused to pay any "unanticipated" shortfall in policy premiums, at which point their FIPs reverted to the series trust from which it was derived, which was controlled by Reliant (or, more accurately, was controlled by the Controlling Defendants who dominated and controlled Reliant).  Rather, Reliant's business model was set up so that the legal ownership of the policies was held by a trust.  Reliant's trust structure involves multiple separate series trusts (each of which held one policy), and all of which are sub-trusts of the primary Trust.

129.   Reliant's customers were led to believe that the portion of their purchase money sufficient to pay their share of anticipated future premiums would be held in trust for each purchaser, to pay the customers' share of anticipated premiums.  The customers were the express beneficiaries of the "Premium Reserve" trusts.  Net purchase money that exceeded that amount (*i.e.*, the purchase money less transaction costs) were placed in a trust for which Reliant was the beneficiary, and was supposed to be used to pay Reliant's operating expenses.

**B. Reliant's Ownership and Member Disputes**

130.   As of April 2012, Michaels and Cooper jointly held a majority (51%) interest in Reliant through a company called Monaco Holding Company, Inc. ("Monaco") and Kleinfeld held a 49% interest in the company on behalf of Scott Grady.  Cooper and Michaels were longtime friends who jointly owned other businesses in addition to their interests in Reliant.  Cooper was a member/owner of Reliant (indirectly through Monaco) from Reliant's inception, and later became a direct member/owner of Reliant.  As of December 2012, Monaco owned two-thirds and Kleinfeld owned one-third of the ownership interest in

AMENDED COMPLAINT

Reliant. Cooper acquired a one-third membership interest directly in Reliant on or before November 5, 2013.

131.   In 2013, after Cooper experienced health issues and stopped working for Reliant, Cooper and Michaels entered into a separation agreement regarding Reliant and other businesses that they jointly owned, which contemplated that Monaco would be dissolved and that "Cooper would maintain a one-third ownership interest" in Reliant. (the "Separation Agreement").  The effective date of the Separation Agreement was December 31, 2013.

132.   Thereafter, Michaels and Kleinfeld stopped paying distributions to Cooper, made hiring decisions and agreed to compensation without consulting Cooper and stopped providing him with regular financial information.

133.   In November 2015, pursuant to a provision of a third amended operating agreement (purportedly adopted without Cooper's consent) enabling a majority of the members to require a minority member to surrender their ownership interest, Michaels and Kleinfeld (on behalf of Grady) voted to approve the termination of Cooper's membership interest in Reliant.

134.   Reliant then filed a lawsuit against Cooper in the Superior Court of California County of Los Angeles (the "State Court"), seeking a judgment declaring that Reliant had properly terminated Cooper and alleging that Cooper had improperly converted certain company assets. Cooper then filed a cross complaint against Reliant, Michaels, Kleinfeld and Grady asserting that Michaels had breached the Separation Agreement, that the other members of Reliant had breached the operating agreement, as well as various other claims of fraud, breach of fiduciary duty of loyalty, fraudulent transfers and an accounting.

AMENDED COMPLAINT

135.    Ultimately after a trial and multiple amended judgments, on May 12, 2021, the State Court awarded the following, *inter alia*, to the Cooper Parties through its Third Amended Judgment (and the prior amendments and original judgment relating thereto): (1) damages for breach of Reliant's operating agreement and the Separation Agreement based on Cooper's one-third membership interest in the amount of $6,028,786.00, plus prejudgment interest of $1,492,747.98 jointly and severally against various defendants, including Michaels (and Michaels' *alter egos*, *i.e.*, the 2007 Irrevocable Octopus Trust, the RLM Trust and the 2007 Irrevocable MMA Trust, Romelli Cainong as trustee of these trusts and any successor trustee thereto) and Grady (and Grady's alter egos PB Consulting #1, LLC, PB Consulting #2, LLC, 18LS Holdings, LLC and LaForce Holdings, LLC) (collectively, the "Judgment Debtors"); (2) $4,200,000.00, plus pre-judgment interest of $494,794.52 against the Judgment Debtors, including Michaels, Grady, their alter egos and those alter egos' trustees; (3) $1,001,000.00 in punitive damages against Michaels and $500,000.00 in punitive damages against Grady; and (4) post-judgment interest at ten percent (10%) and fees and costs of $838,912.89 granted as of June 26, 2020 (the "State Court Judgment"). *See e.g., Reliant Life Shares, LLC v. Cooper*, 90 Cal. App. 5th 14 (2023) (the "Reliant Opinion").

**C. Reliant's Trustees**

136.    Christiana Trust is and was a federal savings bank that acted as the trustee for the Reliant Life Shares Series Trust (the "Reliant Trust"), which purportedly administered the Reliant Trust as trustee, was involved in the transactions between Reliant and customers, and accepted customer funds to be used to purchase a fractionalized interest in life insurance policies and which were supposed to be placed into the Reliant Trust to assure their use in paying the premiums on the policy or policies in whom each customer

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

specifically purchased a fractional interest position. Christiana Trust served in this capacity between approximately 2010 through 2015.

137.   UMB is a national banking association headquartered in the State of Missouri. On June 15, 2015 after Christina Trust resigned, UMB executed an Agreement and Declaration of Trust with Reliant as Grantor which appointed UMB as the Trustee of the Reliant Trust. ("Reliant-UMB Trust"). UMB's Trust Office was UMB Bank Corporate Trust, 1010 Grand Blvd., 4th Floor, Kansas City, Missouri 64106.  UMB acted as the Trustee of the Reliant-UMB Trust from on or about June 15, 2015 until UMB's resignation became effective June 29, 2022.

138.   First Western Trust Bank ("FWT") is headquartered in Colorado, with a corporate trust office at 1901 Avenue of the The Stars, Los Angeles, California 90067. On June 16, 2015 FWT executed an agreement entitled "Reliant Life Shares Series Statutory Trust 2 Agreement and Declaration of Trust" with Reliant as Grantor which agreement appointed FWT as the Trustee of the Reliant 2 trust. ("Reliant-FWT Trust") FWT acted as the Trustee of the Reliant-FWT Trust from on or about June 16, 2015 until FWT's resignation became effective December 21, 2022.

139.   Bank of Utah ("BOU") is a Utah based bank with corporate headquarters located at 2605 Washington Blvd, Ogden, Utah 84401, with approximately 20 locations throughout Utah. On or about December 1, 2014 BOU entered into a trust agreement as Trustee with Reliant as Grantor for a Series known as GN4954 ("Reliant GN4954 Trust"). BOU acted as trustee of the Reliant GN4954 Trust from December 1, 2014 through all relevant times alleged herein.

140.   On June 29, 2022, upon the resignation of UMB as Trustee of the Reliant-UMB Trust, BOU entered into a tri-party agreement with Reliant and UMB to act as the

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

"successor" trustee to the Reliant-UMB trust pursuant to an Instrument Of Termination, Appointment And Acceptance dated 06/29/2022. BOU has acted as successor Trustee on the Reliant-UMB Trust since June 29, 2022.

141.   On December 21, 2022, upon the resignation of FWT as Trustee of the Reliant-FTW trust, Reliant appointed BOU as the successor trustee. BOU has acted as successor trustee on the Reliant-FWT Trust since June 29, 2022.

**D. Wrongful Conduct by Defendants**

   **a. False, Misleading and/or Deceptive Advertising.**

142.   In order to provide potential customers[5] with a sense of security that customers' FIP purchase money would indeed be used as promised to pay the premiums on FIPs in policies a customer purchased, the insider and other Defendants who dominated and controlled Reliant, including Michaels, Grady, Murphy, Borchert and/or Estrella ("Controlling Defendants") informed potential customers (through Reliant's website/marketing materials), that Christiana Trust was:

(a) "a division of Wilmington Savings Fund Society, FSB, a Delaware institution founded in 1832 and one of the ten oldest continually operating banks in the United States.  WSFS Financial Corporation is a $3.8 billion financial services company"; that

(b) "WSFS Financial Corporation is a $3.8 billion financial services company. Its primary subsidiary, Wilmington Savings Fund Society, FSB (WSFS Bank), is Delaware's oldest, locally-managed bank and trust company headquartered in Delaware and has $7 billion in assets under management or administration"; that

---

[5] Reliant customers purchased FIPs as an investment, and so are often referenced in Reliant's marketing materials as "investors."  For the sake of clarity, Plaintiff refers to these persons as "customers" not "investors" so it is clear that they purchased an investment from Reliant as its customers, whose purchase money was to be held in trust by the then existing Trustee to be used to pay anticipated premiums, and were not investing in Reliant itself (but rather were purchasing FIPs through Reliant as an investment).  As such, those purchasing Reliant's FIPs are not by virtue of such purchase equity holders in Reliant, but rather customers of Reliant holding unsecured creditor claims against Reliant's bankruptcy estate by virtue of Defendants' wrongdoing alleged herein.

AMENDED COMPLAINT

(c) "Investor's funds are placed in an Escrow Account which is held and controlled by Christiana Trust"; and that

(d) "Reliant LIFE SHARES HAS NO ACCESS TO INVESTOR FUNDS WHATSOEVER."

*See e.g.,* Reliant's online website/marketing materials copyrighted 2010-2011) (capitalization for emphasis in original).

143.    Subsequently, in order to provide potential customers with a sense of security about safeguarding potential customers' funds, Defendants (through Reliant) informed potential customers (through Reliant's website/marketing materials) that Christiana Trust was:

(a) "a division of Wilmington Savings Fund Society, FSB, a Delaware institution founded in 1832 and one of the seventh oldest continually operating banks in the United States. WSFS Financial Corporation has $4.4 billion in assets and $17.1 billion in fiduciary assets"; that

(b) "Reliant Life Shares chose Christiana Trust because of their combined experience of over 30 years in life settlement transactions"; that

(c) "WSFS Financial Corporation is a $4.4 billion financial services company. Its primary subsidiary, Wilmington Savings Fund Society, FSB (WSFS Bank), is Delaware's oldest, locally-managed bank and trust company headquartered in Delaware and has $17 billion in fiduciary assets"; that

(d) "Investor's funds are placed in an Escrow Account which is held and controlled by Christiana Trust"; that

(e) "After the investor selects their policy, the trustee will transfer their Subscription funds from the Subscription Escrow Account to secure their purchase and fund the Premium Reserve Account, which is administered by Christiana Trust as Trustee"; and that

(f) "The trustee confirms that all required premiums are paid from the Premium Reserve Account, maintained by Christiana Trust.

*See e.g.,* Reliant's online website/marketing materials copyrighted 2010-2013.

144.    Similarly, in 2014, Defendants (through Reliant's website) informed potential customers (through Reliant's website/marketing materials) that:

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

(a) Christiana Trust provided "Independent Escrow and Banking Services"; that

(b) Christiana Trust was "a division of Wilmington Savings Fund Society, FSB, a Delaware institution founded in 1832 and one of the seventh oldest continually operating banks in the United States.  WSFS Financial Corporation has $4.4 billion in assets and $17.1 billion in fiduciary assets"; that

(c) "Reliant Life Shares chose Christiana Trust because of their combined experience of over 30 years in life settlement transactions"; that

(d) Reliant "Earn[s] Investor Confidence through our Structure"; that

(e) "In order to ensure safekeeping of the assets placed in trust, Reliant Life Shares has authorized Christiana Trust to act as custodian and trustee, with sole signatory authority on this account; that

(f) "After the investor selects their policy, the trustee will transfer their Subscription funds from the Subscription Escrow Account to secure their purchase and fund the Premium Reserve Account, which is administered by Christiana Trust as Trustee"; and that

(g) "The trustee confirms that all required premiums are paid from the Premium Reserve Account, maintained by Christiana Trust.

*See e.g.,* online website/marketing materials copyrighted 2014.

145.    Similar statements were made by the Controlling Defendants (through a brochure made available on Reliant's website), which also touted that "Investor's funds are placed in an Escrow Account which is held and controlled by Christiana Trust."

*See e.g.,* Reliant's brochure available through Reliant's website while Christiana Trust served as Reliant's Trustee.

146.    Similar statements were made by Defendants (through Reliant's website) while UMB served as Reliant's Trustee, namely:

a.  UMB provided "Independent Escrow and Banking Services"; that

b.  UMB was "a division of UMB financial Corporation, an institution founded in 1913 and for the fifth straight year was ranked as one of America's Best Banks

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

. . . [and since] 2007 UMB has consistently been ranked as the fourth largest municipal trustee and has 41.4 billion in assets under management"; that

c. Reliant "Earn[s] Investor Confidence through our Structure"; that

d. "In order to ensure safekeeping of the assets placed in trust, Reliant Life Shares has authorized UMB to act as custodian and trustee, with sole signatory authority on this account"; that

e. "The trustee confirms that all required premiums are paid from the Premium Reserve Account, maintained by UMB";

See e.g., Reliant's online website/marketing materials copyrighted 2016.

147. Similar statements were also made by Defendants (through a brochure available on Reliant's website) while UMB served as Reliant's trustee, including:

a. Touting the "[t]rust structure forholding life settlement assets," "Escrow Controls in place for managing all client monies," and "Complete asset transparency for informed investment decisions";

b. Touting "Independent Trust & Escrow Controls";

c. "Life Shares are structured to protect the client's holdings from any external event through a trust structure";

d. "As an added protection, Reliant Life Shares LLC has all client monies managed independently by a top-quality Escrow Agent,"

e. "By using an independent and professional Trustee/Escrow Agent, client monies are only disbursed as directed in the purchase agreements. The Trustee/Escrow Agent releases funds for the purchase of the beneficial interests in the trusts selected by the client. Throughout the investment term,

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

it also maintains the Premium Reserve Account for the timely payment of a policy's premiums and servicing fees"; and

f. "The Trustee performs the task of ensuring all required payments during the premium escrow period are made so that the policy is not allowed to lapse. (After this period, it is the responsibility of the client to replenish the Premium Escrow Account, which is also managed by the Trustee, for their pro rata share of policy premiums as they come due, in accordance with the terms of the purchase agreement.")

*See e.g.*, Reliant's online brochure available through Reliant's website while Christiana Trust served as Reliant's Trustee.

148.    Similar statements were also made by Defendants (through Reliant's website) while Bank of Utah served as Reliant's Trustee, namely:

a. Bank of Utah provided "Independent Escrow and Banking Services"; that

b. Reliant "Earn[s] Investor Confidence through our Structure"; that

c. "In order to ensure safekeeping of the assets placed in trust, Reliant Life Shares has authorized Bank of Utah to act as custodian and trustee, with sole signatory authority on this account"; that

d. "The trustee confirms that all required premiums are paid from the Premium Reserve Account, maintained by Bank of Utah";.

*See e.g.,* Reliant's online website/marketing materials copyrighted 2016.

149.    Moreover, Plaintiff is informed and believes that "all required premiums" were not (and never were likely to be) "paid from the Premium Reserve Account." The premium reserves were not set up to provide a reasonable estimate of future anticipated premiums,

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

66                                    AMENDED COMPLAINT

but rather were set up to low-ball those anticipated future premiums.[6] As such, it was likely further funds would be needed to maintain the policies sold, and that Reliant would issue "Premium Reserve Calls" to obtain the additional funds likely needed to pay policy premiums. Thus, from inception of the investment, even *without* looting by the Controlling Defendants, it was likely that Reliant's customers would be required to pay more to maintain their FIPs than the Controlling Defendants led Reliant's customers to believe, or would be required to forfeit their FIPs to Reliant. Either way, Reliant's Controlling Defendants would obtain money (purchase money, trust funds and/or subsequent Reserve Call money) or property (*i.e.*, the FIPs) to which they were not entitled. As alleged above, some if not all of the Controlling Defendants (and most of the other Defendants as well) received commissions and/or other compensation as a result of their participation in their false, deceptive and/or fraudulent sale of Reliant's FIP's. Any such ill gotten gains can and should be recovered for the benefit of the Reliant estate – *i.e.*, for the benefit of Reliant's creditors/customers as a whole -- as should any damages and litigation costs incurred by Reliant as a result of Defendants' misconduct.

150. In sum, the foregoing marketing materials were highly deceitful, giving the false and fraudulent impression that the portion of Reliant's customers' purchase money set aside and attributed to Premium Reserves was money that would be placed in trust, safeguarded by the "trust structure" and purportedly "independent" trustees/controls (even safeguarded against Reliant itself) and used to pay policy premiums for the policy or policies

---

[6] Indeed, Plaintiff is informed and believes that Reliant used non-market-standard life expectancy estimates that typically grossly understated the likely actual life expectancy of the insureds, thus providing potential customers with false, deceptive and/or fraudulent incentive to purchase Reliant's FIPs, resulting in the establishment of Premium Reserves unlikely to pay premiums until the insured died (contrary to the representations made in selling Reliant's FIPs), and resulting in a greater likelihood of customers facing a Premium Reserve Call from Reliant and/or Reliant's trustees (also contrary to the representations made in selling Reliant FIPs).

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

purchased by each said customer through Reliant.  In fact, the trusts were structured ostensibly to insulate the Trustees from liability, ostensibly authorized and allowed the Trustees to disburse funds through written instructions at the sole discretion of Reliant (or in this case, however the Controlling Defendants acting through Reliant wanted), and ostensibly did not require the Trustees to investigate suspicious instructions (such as instructions to disburse money in the Premium Reserve trust accounts to anyone, or for anything, other than to pay the premiums for the policy for which the funds were specifically held in trust).  As such, the "trust structure" was not designed to safeguard Reliant's customers' funds, but rather was designed instead to place the trust funds at unique risk of misuse and/or looting by the Controlling Defendants.  As such, many if not all customers purchasing FIPs from Reliant were misled into purchasing those FIPs (or into providing additional funds to replace looted funds under the previously created false, deceptive and/or fraudulent (mis)impression that the Premium Reserve funds were safeguarded, and/or into allowing their FIPs to revert to Reliant), especially while UMB and/or BOU served as Trustee.

### b. Additional Inequitable and/or Deceitful Conduct Related to the Trust Structure, Marketing and Reliant's Business

151.    Controlling Defendants Grady, Michaels, Murphy, Borchert and/or Estrella as owners, members, officers, high level Reliant employees and/or directors while Reliant sold fractional shares of policies under false and/or misleading pretenses, dominated and controlled Reliant, participated and encouraged the wrongdoing alleged herein, breached their contractual, fiduciary and/or tort-related duties to Reliant and its customers.  In essence, among other things, Defendants acted wrongfully, deceitfully, fraudulently and/or inequitably relative to Reliant and its customers by failing to prevent Reliant from selling FIPs under false and/or misleading pretenses, by looting trust funds for the personal benefit

AMENDED COMPLAINT

of themselves and their alter egos, by looting trust funds to conceal prior looting of other trust funds, by improperly billing Reliant's customers through so-called Premium Reserve Calls (without disclosing that the additional funds were not safeguarded as promised), by wrongfully acquiring FIPs that were forfeited to Reliant when certain customers refused to make Premium Calls and provide even more funds to untrustworthy "trustees" managing a "trust structure" that did not safeguard trust funds for their intended purpose, and by wrongfully selling some of those FIPs to their own *alter egos* for less than reasonably equivalent value to further secure for themselves even greater ill-gotten gains.

152. For instance, the statement that Reliant's Trustees had "sole authority" as Trustee was a deceit as described in Civil Code section 1710 in that it was a suggestion of a fact of that which is not true by one who does not believe it to be true. It was also a suppression of a fact by one who gives information of other facts which are likely to mislead for want of communication of that fact. The true facts (undisclosed to investors) were that in Section 4.1 (e) of the UMB Trust Agreement and FWT Trust Agreement each provided that:

> the "for the avoidance of doubt, the Trustee shall <u>not</u> be responsible for handling any funds relating to insurance premium payments and/or any other payments to be made in respect of the Policies held directly or indirectly by any Series, it being understood that the Grantor shall have sole and exclusive responsibility for such payments and all matters related thereto.

Additionally, the so-called "trust" agreements provided in Section 4.2 that, "[t]he Trustee undertakes to perform and <u>shall</u> perform … as the Trustee may be directed from time to time in writing, pursuant to this agreement." Emphasis added. Moreover, under these same so-called "trust" agreements, with regard to each document or written instruction furnished by Reliant with regard to the disposition of the trust funds, the so-called "trust" agreements

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

provided, at Section 4.3, that the Trustees "shall be entitled to rely upon such instrument, and shall not be required to examine such instrument to determine whether it conforms to the requirements of this [so-called Trust] Agreement."  Simply stated, the so-called "Trust Agreement" is a sham deceptively designed to create the false appearance – especially when coupled with Reliant's marketing – that there was some independent third-party Trustee and "trust structure" safeguarding customer money placed in trust to pay policy premiums, when nothing could be further from the truth.

153.   Moreover, the deceptive nature of these so-called Trust Agreements was effectively concealed *de facto* from likely investors/customers as a result of the terms of the Trust Agreements themselves.  For instance, the UMB "trust" agreement did not require the Trustee to give copies of the trust agreement to prospective customers for review, and was not generally provided for review by potential customers.  Indeed, the secrecy surrounding the actual terms of the Reliant "trust structure" continued even after someone invested, in part due to the "structure" of the "trust" agreement itself.  For instance, under the "trust" agreement even actual customers/trust-beneficiaries were not entitled to obtain a copy of the "trust" agreement from the Trustee.  Instead, under Sections 4.6(g) and 7.3(iii), the Trustee was only required to allow the customer to review the trust agreement, during normal business hours, in Kansas City, Missouri, and then only if the request was made in writing – thus *de facto* discouraging even actual customer beneficiaries from reviewing the "trust" agreement and discovering that they had been misled that the trust structure and "independent trustee" "safeguarded" trust funds.  Such provisions were particularly onerous to Reliant's purchasers, since the purchase documents required Reliant's customers to represent that they were California residents, thereby making it unlikely that customers would travel outside of California to discover that the trust agreements did not provide the

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

protections represented. In so doing, the Controlling Defendants effectively concealed that Reliant's marketing statements were highly deceptive and/or outright false that the trust funds were "safeguarded" by the "trust structure" and/or by an "independent" third-party Trustee. In fact, that strategy appears to have worked exceptionally well especially with regard to the UMB trust agreement, because according to the second amended Class Action complaint in *Reed v. Reliant*, Central District of California Case No. 2:23-CV-08577-SB-AGR, "no Class member was provided with a copy of the UMB trust agreement . . ." *See* ¶ 243 therein.

154. In fact, there seems to be only one significant provision in the UMB "Trust Agreement" that, if followed, would have provided the Reliant customers the ability to protect themselves after having been defrauded into entering the Agreement, namely, the Trustee's duty to "provid[e] written notice to the Beneficiary of a Series and any applicable servicer of any disposition of any Trust Assets of such Series." (¶ 5.4(vi).). But UMB does not appear (and Reliant's other trustees do not appear) to have provided the Beneficiaries (*i.e.*, Reliant's customers) with such notice, especially with regard to looted Trust Assets, thereby further concealing the looting of trust assets for the benefit of the Controlling Defendants and their *alter egos* who directly received looted funds (and the indirect benefit of non-insiders who could continue to sell product and earn a paycheck and commissions while the Controlling Defendants' looting remained concealed). In short, the structure of the trust agreements, as well as the manner in which those agreements were carried out, did <u>not</u> provide Reliant's Trustees with sole authority over trust funds, as implied by Reliant's marketing (by the insider Defendants controlled), nor did the structure of the trust "safeguard" the trust funds. Instead, the trust agreements provided <u>Reliant (and its controlling insiders)</u> with *de facto* sole authority, ostensibly authorized the "Trustees" to

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

follow Reliant's instructions blindly, and ostensibly did not even require the "Trustees" to review trust agreement to make sure that the instructions were in accordance therewith. As such, far from providing any "safeguard" of prospective customers' assets, the trust agreements actually *facilitated* the looting of customer funds that could and did occur under such a flawed "trust" structure. If anything, the trust agreement structure put in place and exploited by the Controlling Defendants here was deceptively labeled a "trust," even as the so-called "trust" agreements eviscerated basic trust protections and the independent oversight and management of the trust funds by the trustees.

155. Plaintiff is informed and believes that the false, deceptive and/or fraudulent misrepresentations alleged in this Complaint were highly material to the decision making of Reliant's prospective (and ultimately actual) customers, and were in fact reasonably relied upon by Reliant's customers in purchasing Reliant's FIPs to the damage of the customers (who are now effectively general unsecured creditors of Debtor Reliant) and to the damage of Reliant (and its ability to remedy the damage caused to Reliant's general unsecured creditors).

**c. Additional Findings of Wrongdoing by the State of California**

156. Shortly prior to issuance of the *Reliant* opinion (issued April 4, 2023), quoted extensively herein, on December 14, 2022, California's State Department of Financial Protection and Innovation (the "DFPI"), which regulates the offer and sale of securities in California, issued a Desist and Refrain Order for the protection of investors and the public interest regarding a whole host of deceptive practices, stating:

> 3. Beginning at least as early as 2013 to the present date, Reliant has engaged in the business of offering and selling securities in California in the form of fractional investments in life settlement contracts.
>
> 4. Reliant provides potential investors with life expectancy estimates for the life insurance policies under the life settlement contract investments

AMENDED COMPLAINT

being offered. If an insured under a life settlement contract exceeds the estimated life expectancy, investors need to contribute additional funds to pay the policy premiums to maintain the policy (a premium call). If premiums are not paid, a life insurance policy will lapse and the death benefit, the source of investors' return, will be lost. Exceeding life expectancy estimates also reduces investors' annualized return.

5. In connection with the offer or sale of these securities, Reliant and its agents made untrue statements of material fact and material omissions to potential investors, including but not limited to the following:

a.      That the risk of a premium call was close to zero or just about nil, that 97% of policies pay out on time, that policy payout periods would range anywhere from a few months to a maximum of five years and that very seldom did Reliant have someone living past the 5-year mark, and that the company was almost always right on life expectancy. These statements misrepresented, or omitted material facts, about Reliant's actual performance.

b.      Stating in Reliant's sales materials that "The history of actual maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and half after." This statement implied to investors that Reliant had the same performance when it did not.

Based on the foregoing findings, the Commissioner is of the opinion that Reliant offered or sold securities in California by means of oral or written communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Corporations Code section 25401.

*See*, pp. 1-2. Thus, the DFPI ordered and held that:

Pursuant to Corporations Code Section 25532, Reliant is hereby to desist and refrain from offering or selling any security in California, including but not limited to fractionized investments in life settlement contracts, by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

73                                                          AMENDED COMPLAINT

order to make the statements made, in the light of the circumstances under which they were made, not misleading.[7]

Pursuant to Corporations Code section 25403, subdivision (b), any person that knowingly provides substantial assistance to another person in violation of any provision of this division or any rule or order thereunder shall be deemed to be in violation of that provision, rule, or order to the same extent as the person to whom the assistance was provided.

*See*, p. 3.

157.    Thus, Reliant's conduct (as controlled by the Controlling Defendants) was found by California's DFPI to have constituted the sale of securities using false or misleading statements, and a California superior court (as confirmed by a California appellate court) determined that Grady, Michaels and their *alter egos* committed fraud, fraudulently transferred assets, and committed other wrongdoing justifying a multimillion dollar actual and punitive damages award with regard to the looting of Reliant-related trust funds controlled by the insiders who dominated and controlled Reliant. *Reliant Life Shares, LLC v. Cooper*, 90 Cal.App.5th 14 (2023). Specifically, during the time that Grady, Michaels and/or Murphy controlled Reliant, California's DFPI found that "Reliant offered or sold securities in California by means of oral or written communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *See*, p. 2.

158.    As the DFPI's "Commissioner's Report on the Offer or Sale of Securities by Permit under Corporations Code Section 25113 for 2021" ("DFPI Report") stated,

---

[7] Plaintiff is informed and believes that, due to the domination and control of the Controlling Defendants, Reliant's documents (including without limitation agreements and/or sales/marketing materials) contained such material misrepresentations both before and after the DFPI order.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

> Under California law, only securities that are qualified by the Department of Financial Protection and Innovation (DFPI) or exempt from qualification may be offered or sold in this state. To qualify a security, a prospective securities issuer must submit application documents to the DFPI for review before money may be raised from investors. Securities that are exempt under state law need not be qualified by the DFPI provided that issuers adhere to the rules which apply to the exemption under which they are operating.

*See*, p. 3 (footnote omitted).

### d. Wrongdoing by Third Party Sales People

159. The fact that the DFPI issued an order against Reliant establishes that the sale of FIPs is the sale of securities subject to DFPI regulation, and that Reliant should have disclosed that its sale of FIPs: (1) was the sale of securities and that the securities were either qualified, or exempt from qualification, by the DFPI; and (2) that those selling FIPs on Reliant's behalf were licensed securities brokers. However, Plaintiff is informed and believes that Reliant sold securities using agents, brokers and/or salespeople who were not licensed to sell securities, and that each person who sold or assisted in the sale of securities without a license (where required) is liable for on that ground as well for the resulting damage caused. So too, any third parties involved in selling FIPs, either conspired with and/or substantially aided and abetted, the Controlling Defendants' wrongdoing, and are therefore jointly and severally liable for the Controlling Defendants' wrongdoing, as well as liable for disgorgement of any ill-gotten gains obtained by them through such sales.

### E. Damage to Reliant Due to Defendants' Misconduct

160. The misconduct alleged against Defendants herein not only deprived Reliant of assets (*i.e.,* by looting funds owned, beneficially or otherwise, by Reliant), but created enormous liability of Reliant to its customer base for such misconduct. Among other things, Defendants' afore-mentioned misconduct resulted in multiple individual lawsuits, including

AMENDED COMPLAINT

for instance *Perry v. Reliant Life Shares*, LLC, LASC Case No. 23STCV10150, *Hodges v. Reliant Life Shares*, LASC 23STCV24428, *Lawrence v. Erwin*, LASC Case No. BC500253, *Reed v. Reliant Life Shares, LLC*, Central District of California Case No. 2:23-cv-08577, *Baeza v. Reliant Life Shares, LLC*, Central District Case No. 2:23-cv-00474 (removed, formerly, LASC Case No. 22SVTCV38080), and a class action *Douglass et al. v. Reliant Life Shares, LLC*, Central District Case NO. 2:23-cv-00460 (removed, formerly, LASC Case No. 22STCV38044). So too, Defendants' avaricious misconduct resulted in the commencement of *Reliant Life Shares, LLC v. Cooper,* Los Angeles Superior Court Case No. 604858 (which judicially established Defendants' looting as noted in the Cooper Lawsuit).

161. All of this resulted in significant legal fees and costs borne by Reliant (including without limitation attorneys' fees, costs and settlement costs/payments), as well as a judgment against Reliant for millions of dollars (all due to the Controlling Defendants' domination and control of Reliant for their own personal benefit). Such costs constitute further (consequential) damages, *i.e.,* in addition to the direct damages inflicted by Defendants on Reliant through selling FIPs under false, deceptive and/or fraudulent pretenses, looting Reliant's funds, fraudulently transferring FIPs for less than reasonably equivalent value to Insider Defendants' *alter egos*, and/or other wrongdoing directly damaging Reliant as alleged herein.

162. Defendants are liable for their own wrongful conduct (and that of their *alter egos*) as alleged herein, for substantially aiding and abetting the wrongful conduct of others, as well as for the wrongful conduct of Defendants acting in conspiracy with others to commit the wrongdoing alleged herein. Each of the Defendants knew, should have known and/or consciously/recklessly disregarded that the statements made to Reliant's potential (and

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

actual) customers were false, misleading and/or deceitful – and that selling FIPs under such circumstances created enormous foreseeable damage to Reliant.  Moreover, Reliant was damaged directly as a direct, foreseeable and proximate result of the Defendants' afore-mentioned conduct, and/or consequentially as a natural and foreseeable consequence of their own (or fellow conspirators') misconduct in furtherance of the conspiracy to engage in the wrongdoing alleged herein.

163.   Plaintiff can and should be able to recover from Defendants on behalf of the Reliant estate all funds and other assets improperly looted or improperly transferred under the direction, control, agreement or with the substantial assistance of the Defendants, and to recover for the Reliant estate all direct, consequential and/or other damages resulting from Defendants' misconduct as alleged herein – including without limitation attorneys' fees, costs or other damage incurred in or resulting from the above-referenced litigation (and/or other litigation  arising from Defendants' misconduct).

**F.  Reliant's Receivership**

164.   On June 23, 2023, the State Court in the action underlying the Reliant Opinion appointed Christopher Conway as the limited receiver over Reliant (the "Receiver"), in aid of execution on the Judgment obtained therein.  The State Court also placed a freeze order on Reliant's assets at the same time.  The initial limited receivership orders were amended multiple times during the weeks that followed on July 18 and August 2, 2023.

165.   On August 2, 2023, the State Court expanded the Receiver's authority and powers and ordered that the Receiver would have sole and exclusive jurisdiction and control over Reliant's assets, management, and business operations (the "Receivership Order"). The Receivership Order specifically suspended the power and authority of "any officers, directors, managers, members, partners, employees, and/or agents of Reliant" – expressly

AMENDED COMPLAINT

*including* Scott Grady (and other named persons).  As such, August 2, 2023, is the earliest date on which the Controlling Defendants' domination and/or control ceased.

166.    However, when the Receiver took over Reliant as of August 2, 2023, the Receiver's ability to investigate and bring suit on behalf of the company was severely hampered and delayed due, among other things, to:  (a) Defendants' prior efforts to conceal their wrongdoing; (b) poor record keeping; (c) failure to maintain adequate premium reserves; (d) comingling of funds; (e) the purported resignation of Bank of Utah as Trustee and inability to obtain a new trustee; (f) failure of Grady and other Defendants to comply with Receiver Chris Conway's requests for information when Conway took over as Reliant's Receiver; and (g) an initial $8 million worth of lost death benefits in lapsed policies that could not be re-instated, with the remaining $120 million worth of death benefits subject to imminent loss under delinquent policies that were in the grace period prior to irreversible cancelation, resulting in a loss by August 2, 2023, of at least nine policies with combined death benefits totaling over $53 million.  For instance, Plaintiff is informed and believes that:

- Upon his appointment, the Receiver took steps to collect the books and records of Reliant, assess the status of its operations, and marshal and preserve its assets, including life insurance policies managed, controlled, and held in trusts created by Reliant with apparent aggregate death benefits, at face value, in excess of $177,000,000.

- The Receiver discovered that Reliant had no existing bank accounts, no formal business space or equipment, and no plan to address the handling and management of the life settlement portfolio involving millions of dollars in life insurance policies that had been previously sold in fractional interests to investors.

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

- The Receiver found that he had no access to routine accounting records because the Quickbooks subscription had been cancelled for nonpayment, there were multiple systems being used to track investments and premium payments (none of which were up-to-date).

- The Receiver discovered that there were insufficient reserves held by BOU, as the sole remaining Trustee of the Reliant Trusts, to cover the premium payments due on the policies.

- The Receiver learned initially that policies with death benefits exceeding $8 million had already lapsed without possibility of reinstatement, and the remainder of the policies, with death benefits of $120 million, were in grace with exhausted reserves. Of these, policies with death benefits exceeding $25 million would lapse imminently in the absence of premium payments. Ultimately, at least nine policies for which Reliant sold FIPs, with combined death benefits totaling over $53 million, lapsed before August 2, 2023.

- The Receiver discovered that Reliant failed to keep accurate or detailed records regarding its customers who purchased FIPs, resulting in incomplete and conflicting information provided by Reliant, BOU, UMB, FWT or others. The Receiver found this task particularly challenging because Reliant employed a convoluted operating structure, conducting its operations through numerous limited liability companies, trusts, individuals, and relationships with third parties involved in the life settlement industry, and failed to maintain data systems to allow the Receiver to obtain a complete and accurate accounting of all the existing policies, the premium payment history for each policy, the investors in each policy, and the details of forfeited interests.

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

- The Receiver discovered that Reliant co-mingled funds between and among investor accounts, failed to retain sufficient funds in escrow, and allowed (with the aid of others) insiders and others to divert funds belonging to the company and/or its investors that should have been used to pay policy premiums or basic business expenses.

- The Receiver discovered that, prior to his appointment, BOU tendered a written resignation letter to Reliant on June 26, 2023, prior Trustees and/or banks who had worked with Reliant refused to serve as Reliant's trustee, and all of the many other financial institutions the Receiver contacted to retain a new trustee all declined to serve as a trustee in light of the pending Receivership, the lapsed and/or uncertain status of the policies in the Trusts, the lack of available cash or collateral, the growing number of lawsuits involving Reliant, and the resulting daunting complexity of issues involving the creditors, investors, and the Trusts.

As such, the insider Defendants left Reliant in a shambles, having effectively concealed their wrongdoing while they were engaging in it, having looted the funds Reliant needed to maintain operations, and having failed to create, destroyed or rendered inaccessible the documentation needed to operate the business in the future and to understand the nature, scope and extent of the wrongdoing that they had committed. As such, Defendants' actions forced the Receiver to focus on attempting to salvage the company and its business, including the prevention of further policy cancelation / loss of assets, thereby further impeding Reliant's Receiver's ability to investigate, discover and commence litigation regarding Defendants' wrongdoing.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

167.   Plaintiff is informed and believes that, for the purposes of the statute of limitations, as a result of the foregoing, the causes of action alleged herein were not discovered sufficient to commence running of any statute of limitations until less than a year prior to the filing of the petition in the present Reliant bankruptcy proceedings (and more likely mere months, at most, prior to the commencement of Reliant's bankruptcy proceedings).

168.   The Receivership Order also vested the Receiver sole and exclusive jurisdiction and control over Reliant's assets, management and business operations. More specifically, the Receivership Order provided, among other relief, as follows:

1) The prior Receivership Orders, which were limited in scope, are hereby superseded, modified, amended, and expanded as provided herein. This Order is intended to and shall be the operative Order governing the Receivership from July 28, 2023, going forward.

2) Christopher Conway, Managing Director at Longevity Asset Advisors, shall remain in place as the Court-appointed Receiver over Judgment-Debtor Reliant Life Shares, LLC ("Reliant"), and its subsidiaries, successors, and assigns.

3) Exclusive Control of Assets and Property. *The Receiver shall, and is hereby ordered, authorized and directed to take and to have immediate exclusive jurisdiction, control, and possession of any and all assets and property of or belonging to or in the possession of Reliant, real and personal, tangible and intangible, of whatever kind and description*, regardless of where located or situated, i*ncluding without limitation*, cash, monies, securities, *causes of action*, *claims*, accounts, receivables, interests, and all viatical and life settlement insurance policies, including any foreclosed, forfeited, or beneficial interests therein and proceeds thereof (the "Assets")… Collectively, the Assets and Receivership Records shall be referred to herein as the "Receivership Estate."

4) Exclusive Control of Business Operations & Receivership Estate. The Receiver shall assume and control the operations of Reliant. No person other than the Receiver, and those authorized by the Receiver or this Court to act on the Receiver's behalf, shall possess any authority to act by or on behalf of Reliant, so long as this Order is in effect.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

81                                    AMENDED COMPLAINT

\*\*\*

15)     <u>Substitute Trustee for RLS, LLC as Grantor</u>. Effective immediately, the Receiver shall be designated as the substitute Grantor under the Reliant Life Shares Series Trust, and the Receiver shall have the authority to amend, modify or re-negotiate the terms of said trust as necessary to protect any available Assets and accomplish the directives of this Order.

\*\*\*

20)     <u>Investigation & Litigation</u>. ***The Receiver is authorized to investigate, initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Assets or the Receivership Estate. This includes taking such actions as the Receiver deems necessary, including commencing legal proceedings for and on behalf of Reliant***, its investors and creditors, against those individuals, corporations, partnerships, associations, and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in Reliant or its Assets, and issuing Subpoenas for documents and testimony relating to the same. This specifically includes actions against any members, officers, directors, employees, affiliates, successors, subsidiaries, or any persons acting in concert or participation with them, and such actions may include, but not be limited to, rescission and restitution, the collection of debts, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers or otherwise.

\*\*\*

## **<u>FREEZE ORDER IN EFFECT</u>**

Until further order of this Court, all assets of or under the control of Reliant Life Shares, LLC, or that are attributable to funds provided to Reliant Life Shares, LLC by an investor or client of Reliant Life Shares, LLC, are frozen until possessed by the Receiver.

Receivership Order at pp. 1-2, 5, 7, 14 (bold italics added).

## G. **Reliant's Bankruptcy Proceeding**

169.   The misconduct alleged against Defendants herein not only deprived Reliant of assets, it inflicted substantial litigation costs on Reliant through *inter alia* the litigation

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

referenced herein, but also made it exceptionally difficult and costly to preserve Reliants' (and its customers') assets, and impossible to continue in business or rectify the wrongdoing done in its name – absent relief that could be afforded through bankruptcy proceedings. Accordingly, on October 7, 2024, Reliant's above-captioned Chapter 11 bankruptcy proceeding was commenced. As such, Defendants' misconduct as alleged herein was the direct and proximate cause of Debtor Reliant's present bankruptcy proceedings, and the cost of such proceedings to Reliant is further consequential damages of Defendants' misconduct.

## H. Additional Considerations Affecting Statutes of Limitation

170.   Conspiracy Theory – Plaintiff contends that any otherwise applicable statutes of limitation did not commence to run until completion of the last overt act committed as part of the conspiracy. Plaintiff is informed and believes and based thereon alleges that the last overt act pursuant to the conspiracy was made through Reliant's marketing materials, which Defendants published on Reliant's website, and which remained continuously published on Reliant's website due to Defendants' conduct through approximately the date of Reliant's bankruptcy petition, *i.e.,* in or about October 2024, when such information was finally removed when Reliant's website. This misconduct included but was not limited to leaving the website enabled and intentionally publishing false, deceptive and/or fraudulent marketing materials when the Controlling Defendants no longer had control and dominion of Reliant (*i.e.*, which occurred on or after August 2, 2023), and by failing to apprise the Receiver that:  (a) they had caused Reliant to publish false, deceptive and/or fraudulent marketing materials on Reliant's website; and (b) the website would thereafter continue to publish such false and deceptive information unless and until the content of the website was changed.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

171.   Delayed Discovery / Domination and Control – Plaintiff contends that at all material times, Controlling Defendants dominated and controlled Plaintiff for their own personal benefit, thereby preventing Reliant from refusing to commit the wrongdoing alleged herein, and preventing Reliant from suing Defendants herein to recover for Reliant (and/or for the benefit of Reliant's creditors as Plaintiff now seeks) the damages and other relief sought herein.  Plaintiff (and the dominated and controlled Reliant) could not reasonably have discovered and been able to attempt to rectify such wrongdoing some time *after* August 2023, *i.e.*, after the Receiver had taken over Reliant's operations and was able to investigate and discover Defendants' wrongdoing.

172.   Golden Creditor Theory – Plaintiffs contend that the Golden Creditor Theory applies to create a ten-year statute of limitations because the Internal Revenue Service is listed as a creditor on the master creditor list for the bankruptcy petition.  *See e.g., Shuford v. Etaros Actuarial Servs., LLC (In re JTR1, LLC)*, 644 B.R. 473, 476 (W.D. N.C. Bankr. 2022); *Pereira v. Omansky (In re Omansky)*, 2022 Bankr. LEXIS 2535 (S.D.N.Y. Bank. 2022); *In re HVI Cat Canyon, Inc., v. Grewal*, 658 B.R. 558, 580-81 (Bankr. C.D. Cal. 2024). Moreover, the Internal Revenue Service filed Proof of Claim Number 5 asserting an unsecured claim in the amount of $63,271.85 (general unsecured claim in the amount of $43,481.87 and a priority claim in the amount of $19,789.98). *Id*.

### COUNT I

(Breach of Fiduciary Duty Under State Law and 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

173.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

84                                         AMENDED COMPLAINT

174.    By virtue if their position as owners, officers and/or high-level employees of Reliant, Reliant reposed trust and confidence in the Controlling Defendants.

175.    The Controlling Defendants voluntarily accepted or assumed to accept said trust and confidence.

176.    Consequently, Controlling Defendants owed Reliant a fiduciary duty of care and loyalty, which Plaintiff prosecutes here as assignee in order to recover for the benefit of Reliant's estate.

177.    The foregoing conduct alleged herein is a breach of the fiduciary duties owed by the Controlling Defendants to Reliant, including without limitation: (a) the negligent, gross negligent and/or reckless disregard for proper business management, trust oversight and/or record keeping; (b) issuance through Reliant of false, deceptive and/or fraudulent marketing and/or Premium Reserve calls; (c) obtaining customers, assets and control over assets of customers under false, deceptive and/or fraudulent pretenses; (d) and/or self-dealing for personal gain.

178.    Accordingly, the Controlling Defendants are liable for breach of fiduciary duty for each of their own such wrongful actions.  Moreover, Plaintiff is informed and believes that the Controlling Defendants conspired amongst themselves to commit such wrongdoing and are therefore also liable for all damages proximately caused by the actions of co-conspirators in furtherance of said conspiracy.

179.    Plaintiff is informed and believes that the remaining Defendants (*i.e.*, the non-Controlling Defendants) each provided substantial assistance and made a conscious decision to participate in tortious activity and thereby knowingly assisted the Controlling Defendants in performing wrongful conduct. Consequently, the non-Controlling Defendants and/or Defendants who did not themselves have direct fiduciary duties are liable for aiding

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

and abetting the breach of fiduciary duty by Defendants who did have fiduciary duties breached as alleged herein.

180. Plaintiff is informed and believes that, in committing the acts set forth herein, the Controlling Defendants acted willfully, with the intent to cause injury to Reliant for their own self-enrichment, and/or in reckless and/or conscious disregard of Reliant's rights, and are therefore guilty of malice, oppression and fraud. Accordingly, Plaintiff – as assignee of Reliant's rights for the purposes of prosecuting litigating, inter alia, against Controlling Defendants here to recover damages and other relief for the benefit of Reliant's estate and its creditors – is entitled to punitive damages against Controlling Defendants, and each of them, in an amount appropriate to punish them and to deter them and others from engaging in similar conduct and to set an example.

181. As a direct and proximate result of the wrongful conduct alleged herein, Reliant was damaged in an amount to be proven at trial. Such damages include, but are limited to: (a) assets looted; (b) the fees and costs of litigating with customers who became customers and/or paid Premium Reserve Calls under false pretenses; (c) the fees and costs of litigating with Cooper regarding the division of ill-gotten gains distributed to Michaels, Grady and their alter egos; (d) the fees and costs of the present bankruptcy proceeds, inasmuch as the bankruptcy proceedings were proximately caused by the foregoing misconduct; and (e) the loss of Reliant's assets to Grady as a result of the judgment Grady obtained against Reliant in the Reliant action. Additionally, most if not all of the Defendants herein were unjustly enriched by commissions on sales made under false, deceptive and/or fraudulent pretenses – money that equitably should be disgorged (or otherwise restored) to Debtor Reliant's estate to support the estate's ability to pay unsecured creditor claims.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

182.   Through this Count, Plaintiff is entitled to recover (and seeks to recover) for the benefit of Reliant's estate all available legal and equitable relief, including without limitation direct, consequential and/or other damages, punitive or exemplary damages, recovery of attorneys' fees and costs (as consequential damages from actions other than this Adversary Proceeding as well as any recoverable fees from this Adversary Proceeding), avoidance of any improper asset transfers, a constructive trust over any improperly transferred assets until returned to the estate, disgorgement or other recovery of any other ill gotten gains (such as commissions or bonuses based on sales), the voiding of any claim against the estate by Defendants unless and/or until said assets have been returned, and any injunctive and/or provisional relief as may be necessary or appropriate.

183.   This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control, conspiracy and/or Golden Creditor Theory is applied.

## COUNT II

(Breach of Contract under State Law and 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

184.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

185.   Defendants, as officers of Reliant (or their alter egos), and/or as employees, agents or brokers of Reliant, had an express or implied contract with Reliant (whether directly or through the implied covenant of good faith and fair dealing therein):  (a) to act in a reasonable business manner; (b) to not engage in self-dealing; (c) to refrain from selling Reliant's FIP products under false, deceitful or fraudulent pretenses; (d) to refrain from issuing to Reliant's customers Premium Reserve Calls under false, deceitful or fraudulent

AMENDED COMPLAINT

pretenses; and (e) to otherwise protect and promote Reliant's legitimate business interests and to employ reasonable business practices to avoid committing torts when selling Reliant's FIPs.

186. Through the misconduct outlined herein, Defendants contractually breached the afore-mentioned contract(s) and implied covenants of good faith and fair dealing contained therein.

187. The foregoing breaches of contract proximately caused Reliant damages, in an amount to be proven at trial.

188. Regardless of whether the *alter ego* defendants had contracts with Reliant, as the *alter ego* of Reliant's officers in connection with the wrongdoing alleged herein, the *alter ego* defendants of said officers can and should be held jointly liable for any breach of contract that said officer effected through or by his *alter ego*.

189. Through this Count, Plaintiff is entitled to recover (and seeks to recover) for the benefit of Reliant's estate all available legal and equitable relief, including without limitation direct, consequential and/or other damages, recovery of attorneys' fees and costs (as consequential damages from actions other than this Adversary Proceeding as well as any recoverable fees from this Adversary Proceeding to the extent the contracts contained an attorneys' fees provision), avoidance of any improper asset transfers, a constructive trust over any improperly transferred assets until returned to the estate, disgorgement or other recovery of any other ill gotten gains (such as commissions), the voiding of any claim against the estate by Defendants unless and/or until said assets have been returned, and any injunctive and/or provisional relief as may be necessary or appropriate.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

190.   This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control, conspiracy and/or Golden Creditor Theory is applied.

### COUNT III

(Unfair Competition under State Law and Under 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

191.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

192.   Through the foregoing misconduct, Defendants engaged in unfair competition, including without limitation through unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive or untrue advertising.  Moreover, such misconduct was immoral, unethical, oppressive and/or unscrupulous.

193.   For instance, the Control Defendants' domination and control over Reliant through which they caused Reliant to use misleading marketing materials to acquire customers under the false pretenses that their funds would be safeguarded for use in paying premiums of a specified policy, as well as Defendants' subsequent looting of those funds for their own personal benefit and/or to pay premiums for *other* policies, as well as the use of misleading Premium Reserve Calls to obtain additional funds, constituted unfair competition whose victims were both Reliant's customers and Reliant itself.  By obtaining customer funds that both Reliant and its Trustees were obligated to safeguard, which the insiders then looted, Defendants created legal liability for Reliant regarding return of those funds and generated litigation regarding Reliant's liability in relation thereto – all for the Controlling Defendants' own personal gain (directly or through alter egos).  Indeed, the looting in fact led to the Cooper judgment, which obligated Reliant to pay Cooper his "share"

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

of looted funds.   In essence, through false, deceptive and/or misleading advertising, Defendants were siphoning funds from Reliant and/or its customers, leaving Reliant without the funds needed to meet its obligations and imposing substantial legal liability on Reliant with its customers – essentially competing against Reliant from within.

194.   Reliant and Reliant's customers reasonably relied on the truthfulness of the marketing material (which was issued by Reliant due to the domination and control of Controlling Defendants) that the funds would be "safeguarded" by the "trust structure" and the "independent" Trustees.   So too, Reliant relied on the integrity of the Controlling Defendants – *i.e.*, Reliant's owners/officers/controlling insiders – to employ business practices designed to reasonably assure that Reliant was not using false advertising or other deceit to obtain customers under false pretenses, was not using false or deceptive Premium Reserve Calls to obtain customer funds under false or deceptive pretenses, and was not directing the transfer of Reliant's and/or its customer's funds to Michaels and Grady or their alter egos for their own personal gain at Reliant's expense.

195.   Here, however, Controlling Defendants dominated and controlled Reliant to employ business practices that included using false advertising or other deceit to obtain customers and sell FIPs under false pretenses, using false or deceptive Premium Reserve Calls to obtain additional customer funds under false or deceptive pretenses, and directing the transfer of Reliant's and/or its customer's funds to Controlling Defendants (including without limitation Michaels, Grady and/or their alter egos) for their own personal gain at Reliant's expense.

196.   Moreover, by conspiring with the Controlling Defendants, and/or aiding and abetting the Controlling Defendants' misconduct, the remaining Defendants are jointly and severally liable for Controlling Defendants' unfair competition.

AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

197. Through this Count, Plaintiff is entitled to restitution for the Reliant estate, including without limitation restitution for all funds looted (whether looted directly from Reliant or from customer trust funds that Reliant was obligated through its advertising to "safeguard"), and restitution of all funds expended by Reliant as a result of such looting. So too, any commissions inequitably earned through the sale of FIPs under false, deceptive and/or fraudulent pretenses should be disgorged as needed to support payment of unsecured creditor claims – especially since the creditors' claims arose as a result of such improper FIP sales. In equity and good conscience, all such funds should be restored to Reliant from Defendants, so the depletion of estate assets is restored for the benefit of creditors (including customers who invested in FIPs or paid Premium Reserve Calls under false pretenses). So too, Defendants were unjustly enriched by the afore-mentioned looting, as well as by Defendants' use of Reliant's funds for litigation involving said looting, so in equity and good conscience such funds should be restored to Reliant's bankruptcy estate, including but not limited to being returned as restitution.

198. This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

**COUNT IV**

(False Advertising under 15 USC 1125; 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

199. Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

200. Controlling Defendants, in dominating and controlling Reliant, issued marketing materials (including without limitation website publications and/or written

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

91                                                    AMENDED COMPLAINT

brochures that included False and Fraudulent Safeguard Representations) in Reliant's name that made false statements of fact regarding the product Reliant was selling, including without limitation that customers' monies placed in Premium Reserve trusts were safeguarded by the trust structure and by the independent trustees managing Reliant's trusts (the "False Advertisements").

201.   The False Advertisements were advertisements used by Controlling Defendants (through their domination and control) in commercial advertising or promotion, misrepresented the nature, characteristics or qualities of the "safeguarded" nature of the funds placed in trust to pay policy premiums.  The remaining Defendants conspired with and/or aided and abetted the Controlling Defendants by expressly and/or tacitly affirming the False Advertisements, thus resulting in prospective and actual customers investing in Reliant FIPs under false, deceptive and/or fraudulent pretenses.

202.   Plaintiff is informed and believes that the False Advertisements Controlling Defendants published (and the remaining Defendants affirmed as stated above) actually deceived and/or had the tendency to deceive a substantial segment of their audience, and such deception was material in convincing prospective Reliant customers to purchase FIPs and to provide additional funds as requested in premium calls.

203.   Plaintiff is informed and believes and based thereon alleges that Defendant caused its falsely advertised goods and/or false advertisements to enter interstate commerce, *inter alia*, by encouraging at least one or more Reliant customers to represent falsely in purchase documents that they were California residents when they were not.

204.   Here, Reliant was injured as a direct and proximate result of the False Advertisements, as were Reliant's general unsecured creditors.  In essence, Defendants caused Reliant to issue the False Advertisements to obtain customers/purchasers of

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

92                                    AMENDED COMPLAINT

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Reliant's FIPs under false pretenses, including without limitation that the funds obtained as part of the FIP transaction would be placed in a Premium Reserve trust to pay anticipated premiums and would be "safeguarded" against misuse by the "trust structure" and the "independent" Trustees, and that funds placed in the Premium Reserve would likely suffice to pay all premiums owed without need for a Premium Reserve call.  Defendants then used the lack of meaningful safeguards in the trust structure, and lack of independence of the trustees under that trust structure, to loot the very funds they caused Reliant's customers to believe would be safeguarded and sufficient to pay policy premiums. This caused actual damage to Reliant *inter alia* in that it deprived Reliant of operating funds and the ability to apply its customers' funds in the manner promised, led to further looting to conceal initial looting, caused Reliant substantial litigation fees and costs relating to such false advertising and/or subsequent looting, injured Reliant's goodwill with its customers and otherwise damaged Reliant, gave rise to claims by unsecured creditors who were sold Reliant FIPs under false, deceptive and/or fraudulent pretenses and ultimately damaged Reliant by forcing it to defend multiple resulting lawsuits and by necessitating the present bankruptcy proceedings.  In essence, Defendants used False Advertising as a vehicle to compete against Reliant from within, with reckless and/or conscious disregard for the consequences (and in violation of their obligations) to Reliant and its customers, and for their own personal gain.

205.   Plaintiff is informed and believes that, in committing the acts set forth herein, Defendants acted fraudulently and willfully, with the intent to cause injury to Reliant for their own self-enrichment, and/or in reckless/conscious disregard of Reliant's rights, and are therefore guilty of malice, oppression and fraud.  Accordingly, Plaintiff – as assignee of Reliant's rights for the purposes of prosecuting litigating, *inter alia*, against Defendants here

AMENDED COMPLAINT

to recover damages and other relief for the benefit of Reliant's estate and its creditors – is entitled to punitive damages against Defendants, and each of them, in an amount appropriate to punish them and to deter them and others from engaging in similar conduct and to set an example.

206.    Through this Count, Plaintiff is entitled to recover (and seeks to recover) for the benefit of Reliant's estate all available legal and equitable relief, including without limitation damages, profits, costs of the action, and compensation up to three times damages or profits as may be just, and reasonable fees and costs if and when Plaintiff prevails in this exceptional case.  More specifically, recovery can and should include, without limitation direct, consequential and/or other damages, recovery of attorneys' fees and costs (as consequential damages from actions other than this Adversary Proceeding as well as any recoverable fees from this Adversary Proceeding to the extent the contracts contained an attorneys' fees provision), avoidance of any improper asset transfers, a constructive trust over any improperly transferred assets until returned to the estate, disgorgement or other recovery of any other ill-gotten gains (such as commissions), the voiding of any claim against the estate by Defendants unless and/or until said assets have been returned, and any injunctive and/or provisional relief as may be necessary or appropriate.

207.    Plaintiff is informed and believes that Defendants conspired with each other to commit (and/or aided and abetted each other in committing) the foregoing wrongdoing and false advertising for their own personal gain, and at the expense of Reliant on whose behalf Plaintiff is suing as assignee.

208.    This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

AMENDED COMPLAINT

## COUNT V

(Conversion under State Law and 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

209.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

210.   As assignee of Reliant, prosecuting Reliant's claims herein for the benefit of Reliant's estate, Plaintiff has a right to ownership or possession of the funds Defendants looted from Reliant and/or its customers.  Indeed, with regard to customer funds held in trust by Reliant through the various Premium Reserve Accounts, Reliant had both the right and duty to possess such funds and to safeguard their use to pay policy the premiums for which they had been entrusted to Reliant and Reliant's trustees through Reliant's "trust structure."

211.   Defendants' wrongful acts toward Reliant, including without limitation the looting of the foregoing funds, interfered with Reliant's ownership and/or possession of these funds, and further interfered with Reliant's (and Reliant's trustees') ability to use said funds for the purpose for which they were entrusted to Reliant and Reliant's trustees (*i.e.*, the payment of premiums for the specific policies in which each of Reliant's customers had purchased one or more FIPs).

212.   The specific amount of funds looted is currently unknown, but is believed to be ascertainable and will be proven at trial.

213.   Additionally, Plaintiff is informed and believes that each Defendant received some benefit to which they were not entitled for participating in the misconduct alleged, including without limitation looted funds, one or more FIPs acquired for less than reasonably

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

95

AMENDED COMPLAINT

equivalent value, commissions on wrongful sales, and/or continued employment salary, benefits or wages to continue engaging in wrongful acts.

214.   As a direct and proximate result of the foregoing conversion, Defendants' attempt to conceal said conversion, and the litigation and bankruptcy proceedings resulting from and/or involving said conversion, Reliant suffered direct damages such as loss of the assets themselves, and consequential and/or other damages such as substantial attorneys' fees and costs in various non-adversary actions and the bankruptcy proceedings herein that resulted from such looting.  Plaintiff herein seeks to recover such damages for the benefit of the estate, as well as obtain whatever equitable and/or legal relief is available on this Count.

215.   This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

### COUNT VI

(Elder Abuse under state Wel. Inst. Code § 15610.30 and 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

216.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

217.   Plaintiff is informed and believes and based thereon alleges that Controlling Defendants caused Reliant to target elders as potential customers, who Defendants knew (or should have known) would be easier to financially abuse, both by deceiving into becoming customers based on the false premise that funds placed in trust in connection therewith for payment of premiums would be secure (some of which were later looted by

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

Defendants), later by deceiving them into providing additional cash through false or misleading Premium Reserve Calls, and/or later deceiving them into relinquishing the FIPs Reliant sold to them if they refused to pay Premium Reserve Calls issued (surreptitiously) as a result of Defendants' looting (and/or Defendants' improper life expectancy calculations). Plaintiff is further informed and believes that the remaining Defendants conspired with the Controlling Defendants and/or substantially aided and abetted them in their scheme to obtain assets of elderly victims through false, deceptive and/or fraudulent statements made in connection with improper sale of FIPs and improper premium reserve calls.

218.   For instance, Defendants convinced elders to purchase Reliant's FIPs under the false pretense that the portion of the purchase money needed to pay reasonably anticipated premiums would be set aside and held in trust to pay the anticipated premiums owed by the Series Trust that the Reliant customer purchased, placed in a Premium Reserve Trust that was safeguarded by the trust structure and the independent Trustees to ensure use for that purpose, and then used to pay policy premiums as the premiums came due. But this never happened because the Trustees were not independent and because the trust structure did not ensure use of Premium Reserve funds to pay the policy premiums of the Series Trust they were entrusted to pay. The same is true for Defendants' subsequent acquisition of additional funds through premium calls. If anything, far from safeguarding trust funds to ensure their use for their entrusted purpose, the use of trustees and the trust structure actually implemented was designed to create a false appearance of safeguarding the funds for such purpose. In actuality, the trustees and trust structure were used to facilitate the looting and other misconduct alleged herein, as well as to hinder and delay discovery of such wrongdoing.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

97                                    AMENDED COMPLAINT

219. Through the foregoing conduct, Defendants:

   i. took, secreted, appropriated, obtained or retained property of an elder or dependent adult for a wrongful use or with intent to defraud, or both; and/or

   ii. Assisted in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both;

220. Defendants knew, or should have known, that such conduct by them was likely to be harmful to the elder.

221. Through such conduct, Defendants deprived elders of property rights, including without limitation: (a) the elder's right to have their funds, which the elders placed in trust with and/or through Reliant for use in paying their policy premiums, not only safeguarded as promised, but used as promised for the purpose for which the funds were entrusted (*i.e.*, payment of the policy premiums for the policies in which the customer purchased one or more FIPs); (b) the elders' right to retain ownership of their FIPs, without having to pay a Premium Reserve Call, where there was sufficient entrusted funds to pay policy premiums (or where there would have been such funds available if not for Defendants' looting of funds); and/or (c) the elders' right to have funds acquired through premium calls placed in a properly safeguarded Premium Reserve account for use in paying the premiums for that account.

222. Reliant, as the seller of FIPs to elderly customers, is an interested person with standing to pursue this claim, because Reliant has a valid business, moral, and ethical interest in mitigating the damage caused by Controlling Defendants through their domination and control of Reliant (as well as by the other Defendants' conspiracy with

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

and/or aiding and abetting of said Controlling Defendants). So too, Plaintiff, as both the assignee of Reliant and the collective representative of the general unsecured creditors of Reliant, has a valid business, moral, and ethical interest in attempting to recover for the benefit of the estate (including for the benefit of elder customers/creditors within it) any damages resulting from Defendants' financial abuse of elderly customers of Reliant.

223. Plaintiff is informed and believes that, in committing the acts set forth herein, Defendants acted with oppression, fraud or malice, and that punitive damages should be awarded against Defendants and in favor of Plaintiff to the extent the elder abuse arose from tort and not contract.

224. As a direct and proximate result of the foregoing financial elder abuse, Reliant and its elderly customers were damaged. For instance, Reliant suffered reputational damage and damage to the relationship with its elderly (abused) customers, suffered further damage from the resulting litigation over funds looted from Reliant's elderly customers, and suffered damage through its inability to use the looted funds for their entrusted purpose (payment of premiums). So too, Reliant's elderly customers were damaged when the funds they entrusted to Reliant for use in paying premiums were looted by Defendants, when they lost their FIPs to Reliant for failure to pay a Premium Reserve Call (surreptiously) triggered by Defendants' looting of premium reserves and/or when they tendered additional funds through premium calls made under false pretenses.

225. Through this Count, Plaintiff seeks to recover the foregoing damages, any other damages resulting from Defendants' financial abuse, and any other legal or equitable relief available, including without limitation Plaintiffs' reasonable attorneys' fees and costs of the present adversary proceeding under Cal Wel & Inst Code § 15657.5.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

226. This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

## COUNT VII

(Unjust Enrichment under State Law; 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

227. Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

228. As a result of the foregoing misconduct, Defendants received numerous benefits unjustly, including without limitation: (a) receiving looted funds; (b) receiving assets (FIPs) for less than reasonably equivalent value; and/or (c) receiving commission, salary and/or other benefits as a result of participating in the wrongdoing alleged herein.

229. Defendants' retention of such benefits would be unjust and at the expense of another, including without limitation at the expense of Reliant and Reliant's customers.

230. Through this Count, Plaintiff seeks to recover from Defendants for the benefit of Reliant's estate (and hence for the benefit, *inter alia*, of creditor-customers' therein), all such unjustly obtained and/or retained funds, as well as any FIPs transferred for less than reasonably equivalent value (or, alternatively, the shortfall in reasonably equivalent value), and seek all equitable relief available in relation thereto, as well as any other relief to which they are entitled through this Count.

231. This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

100 AMENDED COMPLAINT

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## COUNT VIII

(Accounting under State Law; 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against Michaels, Grady and/or Grady's Estate, Michaels' and/or Grady's Alter Egos,

Murphy and Estrella)

232.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

233.   By virtue of Defendants' having been officers, controller and/or owners of Reliant (or alter egos of same), and/or having looted millions of dollars of funds from Reliant and its customers, a relationship exists between Reliant and Defendants that require an accounting, including without limitation an accounting of the funds looted by Defendants from Reliant and its customers.  By assignment from Reliant, Reliant has standing to prosecute this claim on Reliant's behalf and for the benefit of the estate.

234.   Due to a paucity of documentation left behind by Defendants in the wake of their looting, a balance is due to Plaintiff (for the benefit of Reliant's estate) that can only be ascertained by an accounting.

235.   This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control and/or conspiracy is applied.

## COUNT IX

(Constructive Fraudulent Transfer and for Avoidance of Same Under

11 U.S.C. §§ 544(b), 550(a), and 551;

Cal. Civ. Code §§ 3439.04(a)(2); and 26 U.S.C. § 6502)

(Against Controlling Defendants Their *Alter Egos*, Conspirators and Aiders and Abettors)

236.   Plaintiff realleges and incorporates by reference the allegations contained in

AMENDED COMPLAINT

all prior paragraphs hereto, as though fully set forth herein.

237. From or after 2014 through *at least* approximately December 31, 2018, Defendants Michaels and Grady (directly and/or through the alter ego Defendants named here) used their domination and control of Reliant to loot millions of dollars from Reliant and/or Reliant's customers. In fact, through at least December 31, 2018, Michaels and Grady (and their respective alter egos) received at least $11.7 million in "payments and distributions" – purportedly based on Michael's and Grady's position as owners of Reliant. In fact, these payments and distributions were not legitimately owed to Michaels, Grady or their respective *alter ego* Defendants named here, and were not made for reasonably equivalent value. Instead, they constituted fraudulent transfers for their own personal benefit (either directly to themselves, or indirectly through transfer for payment of their personal debts or to their own alter egos) – essentially using the corporate coffers of Reliant and the customer trust funds they *de facto* controlled for their own inequitable self-enrichment.

238. In this same time frame:

a. Defendant Michaels, through Defendant PB Consulting #2, LLC, was the owner of a $5.4 million policy issued by Lincoln National Life Insurance Company (Lincoln National), insuring the life of Salim Friwat. "PB Consulting 2, LLC was established solely for the purpose of investing in the Friwat Policy." "Money from Reliant was used to invest in and pay the premiums on the Friwat Policy." Neither Defendants Michaels nor PB Consulting #2 were entitled to the money used to pay for said investment or pay premiums on the Friwat Policy. Rather, Defendants Michaels and PB Consulting #2 fraudulently transferred assets from Reliant, for their own personal benefit, to invest in and

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

AMENDED COMPLAINT

pay the premiums on the Friwat Policy owned by them.  Reliant did not receive reasonably equivalent value for this investment and payment of premiums, but instead gratuitously made these payments for the benefit of Michaels and his alter ego PB Consulting because he and Grady effectively dominated and controlled Reliant for Defendants' personal benefit; and

b. "18LS [Holdings], LLC, an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant. Grady did not pay anything for the tails he received and 18LS [Holdings], LLC paid $1,000 for the entirety of Tails it received." (The tails were later valued at $880,225.98).  In so doing, Defendants Michaels, Grady and their respective alter egos (including at least 18LS [Holdings], LLC, fraudulently transferred to themselves (and/or their alter egos), for less than reasonably equivalent value, Reliant's interest ownership interest in these Tails, once again acting for their own personal benefit at Reliant's expense.

239.    Each of the transfers alleged herein were fraudulent transfers (collectively, the "Fraudulent Transfers") – as the term "transfer" has been defined in 11 U.S.C. § 101(54) and Cal. Civ. Code § 3439.01(m) – of an asset or interest in an asset of the Debtor.

240.    With regard to each of the fraudulent transfers alleged herein, Reliant:

a. received less than reasonably equivalent value in exchange for such transfer; and

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Reliant either:

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

103                                    AMENDED COMPLAINT

i. Was engaged or was about to engage in a business or a transaction for which the remaining assets of Reliant were unreasonably small in relation to the business or transaction; or

ii. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

241. Plaintiff is informed and believes and based thereon alleges that these Fraudulent Transfers were made by the Controlling Defendants as part of a conspiracy to transfer these assets to themselves for their own self-enrichment, and/or to delay creditors (such as those who were convinced under false pretenses to invest in Reliant's proffered FIPs, those convinced under false pretenses to pay wrongfully issued Premium Calls and/or others) from recovering those ill-gotten gains. Moreover, the Controlling Defendants, as well the other Defendants herein who acted as their *alter egos*, conspirators and aiders and abettors are jointly and severally liable for the misconduct alleged in this Count.

242. Indeed, though not a formal element of a constructively fraudulent claim, Plaintiff is informed and believes that the Controlling Defendants here were also transferees who possessed the intent to hinder, delay or defraud Reliant's creditors, were in a position to (and did in fact) dominate and control Reliant in connection with the constructively fraudulent disposition of Reliant's property (as well as the disposition of funds entrusted to Reliant and its Trustees for use in paying policy premiums, which funds Reliant had a right and obligation to possess and apply for the payment of such premiums).

243. This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control, conspiracy and/or Golden Creditor Theory is applied.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

244.   Plaintiff is entitled to recover for the benefit of Reliant's estate, *inter alia*, all transfers fraudulently made, to avoid such transfers, to have a constructive trust or other equitable or legal relief imposed to facilitate return of the fraudulently transferred property (or its equivalent value in damages) and/or to have any claim by a creditor voided unless and until said creditor returns estate assets in his, her or its possession. Plaintiff, through this count, seeks to recover all available legal and equitable relief, including without limitation direct, consequential and/or other damages, recovery of attorneys' fees and costs in actions other than the present adversary proceeding as consequential damages, avoidance of the Fraudulent Transfers and a constructive trust over any fraudulently transferred property until returned to the estate, the voiding of any claim against the estate by Defendants unless and/or until said assets have been returned, and any injunctive and/or provisional relief as may be necessary or appropriate.

## COUNT X

(Intentional Fraudulent Transfer and for Avoidance of Same Under

11 U.S.C. §§ 544(b), 550(a), and 551;

Cal. Civ. Code §§ 3439.04(a)(1); and 26 U.S.C. § 6502)

(Against Controlling Defendants, Their *Alter Egos*, Conspirators and Aiders and Abettors)

245.   Plaintiff realleges and incorporates by reference the allegations contained in all prior paragraphs hereto, as though fully set forth herein.

246.   From or after 2014 through at least approximately December 31, 2018, Defendants Michaels and Grady (directly and/or through the *alter ego* Defendants named here) used their domination and control of Reliant to loot millions of dollars from Reliant and/or Reliant's customers.  In fact, through at least December 31, 2018, Michaels and Grady (and their respective *alter egos*) received at least $11.7 million in "payments and

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

distributions" – purportedly based on Michael's and Grady's position as owners of Reliant. In fact, these payments and distributions were not legitimately owed to Michaels, Grady or their respective *alter ego* Defendants named here, and were not made for reasonably equivalent value. Instead, they constituted fraudulent transfers for their own personal benefit (either directly to themselves, or indirectly through transfer for payment of their personal debts or to their own *alter egos*) – essentially using the corporate coffers of Reliant and the customer trust funds they *de facto* controlled for their own inequitable self-enrichment.

247.  In this same time frame:

a.  Defendant Michaels, through Defendant PB Consulting #2, LLC, was the owner of a $5.4 million policy issued by Lincoln National Life Insurance Company (Lincoln National), insuring the life of Salim Friwat. "PB Consulting 2, LLC was established solely for the purpose of investing in the Friwat Policy." "Money from Reliant was used to invest in and pay the premiums on the Friwat Policy." Neither Defendants Michaels nor PB Consulting #2 were entitled to the money used to pay for said investment or pay premiums on the Friwat Policy. Rather, Defendants Michaels and PB Consulting #2 fraudulently transferred assets from Reliant, for their own personal benefit, to invest in and pay the premiums on the Friwat Policy owned by them. Reliant did not receive reasonably equivalent value for this investment and payment of premiums, but instead gratuitously made these payments for the benefit of Michaels and his alter ego PB Consulting because he and Grady effectively dominated and controlled Reliant for Defendants' personal benefit; and

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

b. "18LS [Holdings], LLC, an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant. Grady did not pay anything for the tails he received and 18LS [Holdings], LLC paid $1,000 for the entirety of Tails it received." (The tails were later valued at $880,225.98).  In so doing, Defendants Michaels, Grady and their respective alter egos (including at least 18LS [Holdings], LLC, fraudulently transferred to themselves (and/or their alter egos), for less than reasonably equivalent value, Reliant's interest ownership interest in these Tails, once again acting for their own personal benefit at Reliant's expense.

248.  Each of the transfers alleged herein were Fraudulent Transfers– as the term "transfer" has been defined in 11 U.S.C. § 101(54) and Cal. Civ. Code § 3439.01(m) – of an asset or interest in an asset of the Debtor.

249.  Each of the transfers alleged herein were made with actual intent to hinder, delay or defraud a person/entity to which Reliant was or became (after the date of such transfer) indebted.

250.  The following indicia of actual intent specified in Civil Code Section 3409.04(b) present here include, but are not limited to the following:

- The transfers were to insiders (and/or to their alter egos) [3439.04(b)(1)];

- The transfers were undisclosed or concealed [3439.04(b)(3)];

- The transfers were of substantially all of Reliant's assets [3439.04(b)(5)];

- Reliant removed or concealed assets in transferring them to insiders and insiders' *alter egos* (due to insider domination and control) [3439.04(b)(6)]; and

107                                          AMENDED COMPLAINT

- Reliant did not receive reasonably equivalent value for the assets transferred [3439.04(b)(8)].

251.    Plaintiff is informed and believes and based thereon alleges that these Fraudulent Transfers were made as part of a conspiracy to fraudulently and/or inequitably transfer these assets to themselves for their own self-enrichment, and/or to delay creditors (such as those who were convinced under false pretenses to invest in Reliant's proffered FIPs, those convinced under false pretenses to pay wrongfully issued Premium Calls and/or others) from recovering from Reliant.  Moreover, the Controlling Defendants, as well the other Defendants herein who acted as their alter egos, conspirators and aiders and abettors are jointly and severally liable for the misconduct alleged in this Count.

252.    Plaintiff is informed and believes that the Controlling Defendants here were also transferees who possessed the intent to hinder, delay or defraud Reliant's creditors, were in a position to (and did in fact) dominate and control Reliant in connection with the constructively fraudulent disposition of Reliant's property (as well as the disposition of funds entrusted to Reliant and its Trustees for use in paying policy premiums, which funds Reliant had a right  and obligation to possess and apply for the payment of such premiums).

253.    Plaintiff is informed and believes that, in committing the acts set forth herein, Defendants acted fraudulently and willfully, with the intent to cause injury to Reliant for their own self-enrichment, and/or in conscious disregard of Reliant's rights, and are therefore guilty of malice, oppression and fraud. Accordingly, Plaintiff – as assignee of Reliant's rights for the purposes of prosecuting litigating, *inter alia*, against Defendants here to recover damages and other relief for the benefit of Reliant's estate and its creditors – is entitled to punitive damages against Defendants, and each of them, in an amount appropriate to

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

punish them and to deter them and others from engaging in similar conduct and to set an example.

254.   This action has been commenced within the applicable statute of limitations period, especially when delayed discovery, domination and control, conspiracy and/or Golden Creditor Theory is applied.

255.   Plaintiff is entitled to recover for the benefit of Reliant's estate all transfers fraudulently made, to avoid such transfers, and/or to have a constructive trust or other equitable or legal relief imposed to facilitate return of the fraudulently transferred property (or its equivalent value in damages).   Plaintiff, through this count, seeks to recover all available legal and equitable relief, including without limitation direct, consequential and/or other damages, punitive or exemplary damages, recovery of attorneys' fees and costs (as consequential damages from actions other than this Adversary Proceeding as well as recoverable fees from this Adversary Proceeding), avoidance of the Fraudulent Transfers, a constructive trust over any fraudulently transferred property until returned to the estate, the voiding of any claim against the estate by Defendants unless and/or until said assets have been returned, and any injunctive and/or provisional relief as may be necessary or appropriate.

## **COUNT XI**

(Negligence/Breach of Duty to Avoid Harm)

(California Common Law; 11 U.S.C. §§ 544(b), 550(a), and 551)

(Against All Defendants)

256.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-172 hereto, as though fully set forth herein.

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

AMENDED COMPLAINT

257.   In California, the "general rule" is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts. *See e.g., Southern California Gas Leak Cases*, 7 Cal. 5th 391, 398, 441 P.3d 881, 885 (2019); *Cabral v. Ralphs Grocery Co.*, 51 Cal.4th 764, 771 (2011).

258.   Defendants were negligent through the conduct they have been alleged to have committed herein, including without limitation, which they should have known was wrongful: (a) selling Reliant's FIP under false, deceptive and/or fraudulent premises, conspiring to engage in such conduct and/or aiding and abetting such conduct; (b) acting in a manner that effectively concealed the false, deceptive and/or fraudulent sale of Reliant's FIPs; (c) looting Reliant's assets; (d) looting Reliant's customers' assets that were promised to be held in trust, safeguarded and used to pay premiums for the policy in which Reliant's customers purchased one or more Reliant FIPs; and/or (e) directly or indirectly wrongfully issuing, or allowing issuance of, Premium Reserve Calls under false pretenses.

259.   Plaintiff is informed and believes that Defendants herein should have known that their conduct as alleged herein would harm Reliant, for such harm was foreseeable.

260.   Plaintiff is informed and believes that Defendants conduct as alleged herein did, in fact, cause proximate harm and damage to Reliant, both directly and indirectly,

261.   Plaintiff is informed and believes that Reliant has not only lost money and/or assets as a result of Defendants' misconduct, but has faced substantial liability and incurred significant attorneys' fees and costs in litigation) as a consequence of Defendants' misconduct, may be required to rescind countless FIP sales and/or be liable for actual and/or punitive damages as a result of such misconduct (and has, in fact become liable to Cooper for such damages in the Cooper Action), and was essentially forced to seek protection of the bankruptcy courts as a result of Defendants' misconduct, the resulting

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

AMENDED COMPLAINT

morass of liability, and the lack of liquidity needed to maintain Reliant's and its customers' FIP assets.

262. Defendants profited from the misconduct alleged herein.

263. Accordingly, Plaintiff is entitled to recover all actual and/or consequential damages resulting from Defendants' misconduct, disgorgement of any ill-gotten gains, and any other legal and/or equitable relief that would be just and proper.

**WHEREFORE**, Plaintiff prays the Court enter a judgment against Defendants and in favor of Plaintiff as follows:

1. Actual damages, whether direct, indirect, consequential or otherwise, including without limitation consequential damages such as attorneys' fees and costs of actions (other than the present action);

2. Joint and several liability for damages resulting from a conspiracy of which a Defendant was a part, and/or from aiding and abetting of wrongdoing alleged herein;

3. Disgorgement and/or restitution to the Debtor's estate of all ill-gotten gains, including without limitation commissions paid for sales of FIPs under false, deceptive and/or fraudulent circumstances;

4. Punitive/exemplary damages;

5. Avoidance of fraudulent transfers;

6. A constructive trust or trusts;

7. Temporary, provisional or permanent injunctive relief, including without limitation an order preventing the dissipation and/or transfer of the assets of in Defendants' possession, custody or control that are subject to recovery for the Reliant estate through this action (including without limitation any dissipation and/or transfer of assets in Grady's estate);

8. Denial of any claims by Defendants against Reliant's estate unless and until Defendants return money or property belonging to the estate;

**Golden Goodrich LLP**
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

111                                      AMENDED COMPLAINT

9.   Recovery of Plaintiff's attorneys' fees and costs in the present action as allowed by applicable contract or statutory law;

10.   An accounting; and

11.   Awarding such other and/or further relief, whether equitable, legal or otherwise, as the Court deems just and proper.

Respectfully submitted,

Dated:   September 3, 2025                    GOLDEN GOODRICH LLP

By:  /s/ Jeffrey I. Golden
     JEFFREY I. GOLDEN

Counsel to Official Committee
Of Unsecured Creditors of Reliant Life Shares,
LLC

Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

112                                    AMENDED COMPLAINT